Robb et al. *v.* Stone et al., School Directors et al.,
Appellants.

Argued March 25, 1929. Before MOSCHZISKER, C. J.,
FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John H. Wilson,* with him *B. R. Williams,* for appellants.—The averments in this bill of complaint are practically the same as the averments in the bill in Day v. School District, 283 Pa. 248, in which the lower court sustained a demurrer to the bill, and the Supreme Court affirmed.

Executive officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such consideration and their decisions reached in a legal way after investigation: Hibbs v. Arensberg, 276 Pa. 24; Lamb v. Redding, 234 Pa. 481.

Appellants challenge the pointing out of competent evidence in this record of any tender or proffer of a donation or gift to the school district on which the school board could obtain or collect one penny.

The court below entirely lost sight of the legal rights, not to mention any equities, of C. C. Miller, contractor defendant, under the contract in suit.

He has a contract that is within any statutory or constitutional limitation of indebtedness of Washington Township School District; the subject-matter, the erection of a school building, is committed by law to the judgment and discretion of the members of the school board; he was the lowest bidder in an open competition, after due notice: Day v. Amwell Twp. S. District, 283 Pa. 248.

*Jas. E. Marshall,* of *Marshall & Watson,* with him *Murrin & Murrin,* for appellees.—The appellees respect-

fully submit that the following cases sustain their position: Lamb v. Redding, 234 Pa. 481; Mason v. School District, 242 Pa. 359; Hibbs v. Arensberg, 276 Pa. 24; Coal Twp. School Directors, 290 Pa. 200; Summit Hill School Directors, 289 Pa. 82.

OPINION BY MR. JUSTICE SIMPSON, April 15, 1929:

The majority of a board of school directors, defendants herein, passed a resolution to abandon an existing high school building at North Washington, and to erect another at Hilliards, in a different part of the school district of Washington Township, Butler County, Pa., and awarded a contract for the construction of part of it to the other defendant. Before any work was done, the present taxpayer's bill was filed, which was so proceeded with that a final decree was entered enjoining the removal of the high school, declaring the contract null and void, and placing the costs on the members of the board who voted to award it. This appeal by all the defendants followed. The correctness of the basic facts found by the court below is the real point in issue, defendants asserting there was no evidence whatever to justify those findings, and plaintiffs that they are not really disputed. We will therefore first state the relevant findings of fact of the court below, whether disputed or undisputed, dividing them, generally speaking, into those which were directly testified to, and those which, because they set forth the purposes of the members of the school board, are to some extent inferential in character; and will follow each set of findings with our views regarding their accuracy and effect on the ultimate question involved, viz., whether or not there is in the case sufficient justification for the decree of the court below in overruling the action of the majority of the school board.

Included in the first class of facts, are the following: Washington Township is a rural district about five miles square, and is divided into two election districts of

nearly equal area, known as the North Precinct and the South Precinct. The school district includes the entire township, Hilliards being in the North Precinct, and North Washington in the South Precinct, each being about the same distance from the center of the township. The village of North Washington is the road center of the township, easier of access from all parts of it than any other place in it, all the main roads passing through it and connecting it with nearly all parts of the township. On the other hand, Hilliards is not located on any main highway, has no contemplated or prospective road improvements, except a spur leading to one of the main roads passing through North Washington, and is very inconvenient of access to a considerable part of the school district. Agriculture is the prevailing occupation of residents of the South Precinct, and its population is stable, while coal mining is the prevailing occupation of those residing in the North Precinct, and its population transient. The coal industry therein is, and for some time past has been, on the decline, some mines being closed, with no apparent prospect of reopening and some operating for one or two days a week only; as to practically all of them, the available coal is rapidly reaching the point of depletion. The result of this is that the population of the North Precinct, the number of school children therein, and the assessed value of its property, are each gradually and continuously decreasing.

The village of North Washington has for many years been the seat of higher education in the school district; in earlier days, by reason of an academy being located there, but, since 1914, by the present high school, which has a practical and adequate building, in good repair, well equipped for high school purposes, and has connected with it an auditorium, recreation and athletic hall, the two buildings having been constantly used heretofore in the maintenance of a four-years high school course. In 1926, by reason of a change in the curriculum

for that course, the school district was notified that an additional room and another teacher would have to be provided, if the standing of the school was not to be reduced to that of a three-years high school. The new room thus required can be added to the school building at North Washington, at a cost not exceeding $3,000, most if not all of which sum, as the school directors knew, can be obtained without any expense to the school district. With such a room, the buildings as they now are would meet all the requirements for a four-years high school, and its maintenance and operation would not involve the school district in the expenditure of any additional money.

Prior to 1926, the majority of the members of the school board resided in the South Precinct. By an appointment of one of the present school directors, then made, the majority thereafter resided in the North Precinct, and they at once began an agitation to remove the high school from North Washington to Hilliards. This agitation they carried into the election of 1927, where two of the majority, residing in that precinct, pledged themselves, if elected, to vote for the removal; by reason of this promise, they obtained a vote in that precinct approximately four times as large as any other vote ever cast there. The result was that these two were reëlected by a small majority, and the control of the board continued to be with those living in the North Precinct. The majority thereupon acquired a lot at Hilliards, in a neighborhood where much of the ground is swampy, and without making any examination regarding the title to or encumbrances against the property, or the character of the deed given to them, and, without making any investigation as to the cost or advisability of adding a room to and equipping the existing building at North Washington for a four-years high school, proceeded with their plans for the construction of a building on the lot thus purchased. In point of fact, it and other adjoining property are together subject to a mortgage of

$175,000, and the deed to the lot provides for a reversion of title to the grantor,* which would carry all improvements made on the property, if at any time it should cease to be used for school purposes. The majority of the board also ignored the plans and specifications for a four-years high school building, furnished to the school district by the state department of education without cost, and employed an architect, who, at a considerable expense, prepared plans and specifications for a complete building at Hilliards, and had them approved by the state department. The board then advertised for bids, but, finding from those submitted that they had not sufficient money to construct the entire building, and knowing that the borrowing capacity of the district, without the approval of the electors, would not make good the difference, eliminated a part of the building from present consideration, obtained new bids on the unexcised portion, and on them awarded a contract to defendant Miller, for the sum of $14,998. The building, as thus reduced in size, is too small for a four-years high school, the need of which was the sole purpose for its being built. It has not been approved by the state board of education, and there is no reason to think it will be, though this is a requisite if it is to be used at all. The

---

* More than five months after the adjudication was entered of record, defendants filed a petition in the court below, asking leave to make a formal answer to the amended bill of complaint, averring therein that they had had no knowledge the deed did not convey a proper title, or that there was a mortgage of $175,000 encumbering the lot; but that after they learned these facts, they had been assured a deed in fee simple, without any reservation, would be executed, and the mortgage would be released so far as concerned the property conveyed to the school district. Attached to the petition was a copy of what purported to be such a deed and release. The petition does not appear to have been presented to or acted upon by the court below, the adjudication was not altered because of anything in it, and none of the assignments of error refers to it, or the facts alleged in it. Its averments, therefore, cannot be considered by us.

entire building, as originally provided for in the archi-
tect's plan, and necessary for a four-years high school
course, will cost, if ever completed and equipped, ap-
proximately $30,000, and the result even then, will be
without any comprehensible benefits to the school dis-
trict. On the contrary, the present high school building
at North Washington, with the room added at a cost not
exceeding $3,000 (much if not all of which can be ob-
tained, as already stated, without cost to the school dis-
trict), will be just as well equipped as the proposed new
building at Hilliards would be, if entirely constructed as
originally planned. Moreover, the present building is
more conveniently located, is more suitable and of easier
access to the school district, as a whole, than the pro-
posed new building would be; and the cost of transpor-
tation to the old building, though at the present time
there are more scholars living in the North Precinct,
would not be greater than to the new building, nor would
the time required for carrying the school children be
longer, because of the fact that the road conditions are
so much better to and from North Washington than to
and from Hilliards.

The only reasons given by the board, for its contem-
plated action in removing the high school to Hilliards,
are the inadequacy of the present school building, and
the fact that the larger number of the present high school
pupils reside in the North Precinct. The first ground
has no foundation in fact, as defendants would have
known had they made any investigation, which they did
not do, because, as they said, "we had determined to
move the school"; and the second, for the reason already
referred to, involves but a temporary matter, and is not
a reasonable justification for removing the high school.
The high school pupils are shifting from time to time
from one place to another, with the prospect of there
soon being a greater number in the South Precinct, prob-
ably permanently so when the coal mines in the North
are abandoned, as they must be shortly.

A careful reading of all the evidence shows that each of the above findings has ample evidence to support it; and hence, under our well settled rule, must be accepted as correct (Williams v. Finlaw, Mueller & Co., 292 Pa. 244; Myers v. Ohio-Penn Gas & Oil Co., 294 Pa. 212; Husted v. Parts Engineering Co., 296 Pa. 376), especially as the trial judge had known the locality during all his life, and had the benefit of seeing as well as hearing the witnesses,—this latter being a most important fact on appeal: Clarkson v. Crawford, 285 Pa. 299, 303; Hall & Co. v. Lyon, Singer & Co., 286 Pa. 119.

The primary inferences of fact which the court below draws from the testimony (some of which are, however, necessarily commingled with the evidence itself, and all of which will be quoted, so far as this is reasonably possible), are as follows: "The decision to remove the high school was not reached upon a careful, honest and full consideration of the conditions of the township, the public welfare or the interests of the school district." It was "based upon selfish and improper motives......the personal reasons [being a] desire to obtain convenient access [to the school] for the directors' families and those residing in the North Precinct, and to work a disadvantage to the residents of the South Precinct," towards whom "their attitude......was that of revenge." The majority "controlling the school board did not consider the fact that the present building could be adjusted to a four-years high school, at little or no cost to the district. They did not consider the road advantages of the different locations, nor the road programs of the township. They did not consider the costs they were imposing on the district, or the ability of the district to bear such an expense...... The evidence and all the facts and circumstances of the case point to the conclusion that neither one of the reasons advanced by the majority of the school board is advanced in good faith, and that the decision to move the high school was not reached from a due consideration of the said reasons or any

490

others in any way related to the public welfare or the public interest; but, on the other hand, indicates that it......was but the execution of a predetermined plan to remove [the school] from the South Precinct to the North, regarless of the public interests or welfare...... To accomplish this the public interest, the good of the district, and the official discretion vested in the school board, have been thrown to the four winds." Their explanations of their conduct "are now offered, not as a reason for an act done in good faith, but as an excuse for a proposed improvident, unnecessary and unwise act." The future needs of the district were utterly ignored. "The fact that a consideration of the public interest was not a part of their program......clearly appears......from their failure to examine or have examined the title to the lot they were purchasing to erect a new building upon; their purchasing a base fee title to prevent a possible removal of the high school in the near future; the determination to erect but a part of the building, though "knowing it to be valueless unless [all of it was] completed," this being done "for the purpose of irrevocably committing the district to the location......[though] the part proposed to be erected could not be approved as a four-years high school; their selection and payment of a private architect at a large cost to the district, after and in the face of a tender of the same services by the State free of cost"; their failure to apply for leave to borrow a sufficient sum to at once complete the entire building because they feared "the district would not authorize them to erect" it, and thus their scheming would come to naught; "and the fact that they corruptly promised the proposed action as a campaign promise"; these things when considered together "rebut all favorable inferences [which might otherwise be drawn] as to their action and clearly reveals its unlawful and arbitrary character."

From the foregoing two classes of findings of fact, the court below concluded, as its ultimate and vital finding,

that the action of the majority of the board, herein complained of, was the "exercise of arbitrary will and caprice, based upon selfish and improper motives [in no] way related to the public welfare or the public interest."

We have spoken of some of the findings of the court below as inferences; but they are none the less findings of fact, based not only upon what the witnesses said and did, and on their manner when saying and doing them, but also on their manner when testifying; and are therefore entitled to the same credence as in the case of a finding reached by a consideration of contradictory direct testimony. The purpose of the majority of the board in acting as they did is the point here involved, and their state of mind on this point, in the absence of admissions by them, must, in the very nature of things, be determined from a consideration of the matters referred to: Ickes v. Ickes, 237 Pa. 582; Com. v. Widovich, 295 Pa. 311. Indeed, most of the foregoing inferences are such as an ordinary man, even with the best disposition toward the school board, would unhesitatingly draw, for they are, literally, the only reasonable ones arising out of the admissions of the majority of the board, and the other facts directly testified to and found to be true. Hence, as the trial judge saw and heard the members testify, he alone was in a position to weigh and consider properly these several matters, and, therefore, we cannot say, under the authorities above cited, that he erred in concluding they "exercised but arbitrary will and caprice," and were actuated "by other considerations than the public interests." This being so, the case is squarely ruled by what we said in Lamb v. Redding, 234 Pa. 481, and the cases in its train, the last being Coal Township School Directors, 290 Pa. 200, 204.

In the first, we said at page 484: "If it appeared that the proposed abandonment of the present site was demanded because of its inadequacy, or because of considerations affecting the public health, or because the

adoption of a new site would result in advantages bearing some reasonable proportion to the expenditure required, or that there was reasonable ground for difference of opinion with respect to these matters, the court would be without jurisdiction to interfere with the determination of the board as to its line of action. That all the things here complained of, that is to say, the abandonment of the present site regardless of the amount expended thereon, and the selection and purchase of the one proposed, are within the power delegated to the school board, is not open to question; and presumably the determination of the board to do these things rests upon considerations of public welfare, and has been reached by the exercise of intelligent judgment in connection therewith. The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited, and they are permitted to interfere only where it is made apparent that it is not discretion that is being exercised, but arbitrary will and caprice. Discretion involves the exercise of judgment incidental to the proper performance of the duty delegated. When the contention is that the proposed action is unwise, no matter by what consensus of opinion this is shown, the law will refer it to mistaken judgment over which it has no supervision. But if it cannot be so referred; if the facts admit of no other [reasonable] conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, the law will regard it as an abuse of power, a disregard of duty, and it becomes the duty of the courts to interfere for the protection of the public."

Under the facts found by the court below in this case, it is clear that the action of the majority of the school board was not "the exercise of judgment incidental to the proper performance of the duty delegated," but, on

the contrary, was a determination "influenced by other considerations than the public interests," and hence, it is "the duty of the courts to interfere for the protection of the public." This the court below did, and this we must do.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants.