## Snyder v. Borough of West Reading et al.

*Stevens & Lee* and *Charles H. Weidner*, for petitioner.
*Paul H. Price*, for respondents.
SCHAEFFER, P. J., July 1, 1935.—

### Findings of fact

1. As of February 21, 1933, a resolution was passed by the Council of the Borough of West Reading and approved by the burgess of said borough which fixed the commission for the collection of borough taxes by the tax collector who should be elected in November 1933 for the term of four years, at one half of one percent of the amount collected by him during the rebate period and four percent of the amount collected by him during the flat and penalty periods. The resolution further provided that the tax collector should pay out of the commissions received by him the premiums for the annual bond to be furnished by him as required by law, but should retain out of the taxes collected such actual printing and postage expenses as should be incurred by him in the performance of his duties.

2. The plaintiff, John L. Snyder, was duly elected tax collector for said borough in November 1933.

3. The defendants are the Borough of West Reading,

the members and officers of the borough council and the burgess.

4. The tax duplicate of said borough for the year 1934 is $68,802.24.

5. The plaintiff has, in accordance with the requirements of the borough council, filed his bond in the full amount of the duplicate and said bond has been approved by the Court of Quarter Sessions of Berks County.

6. The premium upon said bond, paid by plaintiff, was $344.01.

7. For the year 1934 the rebate period was from July 1st to and including August 30th; the flat period from August 31st to and including November 1st; beginning November 2d a penalty of five percent was added.

8. During the rebate period plaintiff collected $39,-161.28 upon which his commission at the rate of 0.5 percent was $195.81.

9. During the flat period plaintiff collected $5,314.86, upon which his commission at the rate of four percent was $212.79.

10. At the beginning of the penalty period there remained to be collected $23,658.57, of which amount plaintiff will likely collect about ten thousand dollars before he will be required to surrender his duplicate. Upon the $10,-000 his commission would be $400.

11. The total of Mr. Snyder's commissions as collector of the borough taxes for the year 1934 would, therefore, be about $758.40, or, according to the testimony of the borough manager, about $744.

12. In addition to the premium upon his bond, Mr. Snyder expended the sum of $180 for stenographic services in the preparation of his tax notices; and his net remuneration for the year was, therefore, about $220 or $234.

13. By virtue of his office, Mr. Snyder is also the collector of the school and county taxes levied in the borough, for which he receives commissions upon the amounts actually collected by him.

## Discussion

The issue here is whether or not the court can declare the commissions of the tax collector as established by the resolution of the borough council to be so inadequate, unfair, and oppressive as to justify us in decreeing the resolution itself illegal and void. It is the amount of commission during the rebate that is in controversy; the resolution fixes that at 0.5 percent, whereas it had formerly been 2 percent. The resolution made no change in the rate of commission during the flat and penalty periods when it was and is four percent of the amount collected.

For 1934 the amount of the duplicate is $68,802. If we assume that all the taxes were received by petitioner during that period, his total commission (disregarding the "rebate" allowed to taxpayers) at the rate of 0.5 percent as fixed by council would be $344.01. This is the exact amount of the premium which he had been obliged to pay to procure his bonds. So if all taxes were paid during the rebate period, the collector would receive nothing for his work and responsibility—in fact, because of the rebate he would not even recover the full amount of the premium on his bond. But as a matter of fact all the taxes are not paid during the rebate period. In 1934 petitioner collected $39,-161—upon which his commission was $195.81. At four percent he earned $212.79 during the flat period by collecting $5,314.86. These figures would leave about $24,-300 remaining uncollected at the beginning of the penalty period—although the borough manager testified that the uncollected amount then was $23,658. The difference may be made up of the rebates allowed. But taking the manager's figure, we find that he says that of the sum remaining uncollected, the sum of $10,000 would be a reasonable amount to expect petitioner to collect before he would be required to surrender his duplicate. Upon the $10,000 his commission would be $400. Accordingly, his total commissions for the collection of 1934 borough taxes would be about $808 as against which he had to pay $344.01 for his bond. His net return for his work

for the year would, therefore, be about $464—not counting the sum spent for the hire of clerks in aiding him in getting out the tax notices.

In 1932, however, Mr. Wagner stated that the amount of the duplicate was $74,694 and that there was collected during the rebate period the sum of $52,000. At the present rate the commission on that would have been $260 and if we assume that about the same amount remained uncollected at the end of the year when the collector would have had to surrender his duplicate, as Mr. Wagner estimated would be the case in 1934, to wit: about $13,000, the collector would have collected about $9,700 after the rebate period upon which his commission would have been $388, making a total commission for the year of $648 against which he would have had to charge the premium on his bond at 0.5 percent of the duplicate or $373.47. This would leave a net reward for his year's work of about $275.

We may question whether it is a wise public policy which so meagrely rewards the responsible services of a tax collector. We must bear in mind, however, that the borough tax collector under the law is also the collector of the school and county taxes levied in the borough, for which work he receives other commissions. But The General Borough Act of May 4, 1927, P. L. 519, in article 13, sec. 1309, 53 PS §13399, provides that the tax collector's "commission shall be fixed by the corporate authorities of the borough, and shall not exceed five per centum of the amount collected." And the Act of May 13, 1927, P. L. 992 (no. 479), prohibits each city, borough, or township from increasing or diminishing the salary, compensation or emoluments of any elected officer after his election. This act in our opinion forbids the increase of petitioner's commission during his present term.

No Pennsylvania case has been cited in which the ordinance or resolution fixing the rate of the commissions to be paid to the tax collector has been stricken down upon the ground that the compensation was too small; there

are, however, cases in which the action of the taxing authorities has been set aside because the compensation fixed thereby was too large. As was said in Mason v. Hanover Township School Dist., 242 Pa. 359, at page 363, "it is apparent that there must be somewhere a line of demarcation between the exercise of reasonable official discretion in fixing compensation upon the one hand, and a clear abuse of that discretion, and the unreasonable performance of duty, upon the other. No specific rate of compensation is fixed by the law. It contemplates the exercise of reasonable discretion by the school board, in the interest of the public."

In Robb et al. v. Stone et al., 296 Pa. 482, at page 492, the court said:

" 'When the contention is that the proposed action is unwise . . . the law will refer it to mistaken judgment over which it has no supervision. But if it cannot be so referred; if the facts admit of no other [reasonable] conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, the law will regard it as an abuse of power, a disregard of duty, and it becomes the duty of the courts to interfere for the protection of the public.' " See also Ritzman et al. v. Coal Township School Directors, 317 Pa. 271.

The principles thus announced apply to other taxing authorities such as a borough council as well as to school boards. The basis of the interference by the courts is the protection of the public. The fact that the statute commits the determination of the rate of commission to the corporate authorities of the borough and provides that such commission shall not exceed five percent does not warrant the council in fixing any rate up to five percent, irrespective of the amount of work and expense involved; the rate should be fixed only after a careful consideration of all the elements bearing upon the problem as viewed from the public interest. The courts recognize that the law imposes the primary duty upon the taxing

body and that this action is presumed to be right and lawful. But if, as we have seen, it is established that the action was influenced by considerations other than the public interest, the court will interfere. If, however, it appears merely that the action was unwise and not contrary to the public interest, the court is powerless to act. In all cases the conflict with the interest of the public must clearly appear.

In the case before us it cannot be said that a conflict with the public interest appears. There is no allegation that the work of collecting the taxes has suffered in any way by reason of the reduction in the rate of commission, nor that there is any difficulty in obtaining the services of an able and honest person to serve as tax collector. "It is a different proposition for a court of equity to step in and protect the public against the clear breaches of duty by an officer and for equity to determine what would be a reasonable compensation for a public officer on his petition": Sefler v. Borough of McKees Rocks, 72 Pa. Superior Ct. 81, 85. Every laborer should be worthy of his hire; the collector should receive reasonable compensation for his work. But we cannot say that the petitioner has shown a case which would justify our interference. It must be borne in mind that the rate now in existence was established months before petitioner's election and that he knew of the action of council in fixing the rate before he took office. In this connection it is not without interest to recall that, under special acts of assembly, the practice was not uncommon of awarding the office of tax collector to the lowest bidder. See Act of March 25, 1844, P. L. 160, repealed by the Act of May 8, 1919, P. L. 168, and Berks County, to use, v. Levan et al., 86 Pa. 360.

And now, to wit, July 1, 1935, the petition is dismissed.