## Ladd et al. v. Reynolds et al.

*Storey, Bailey & Rupp*, for plaintiffs.

*Frank F. Truscott,* Attorney General; *Elmer T. Bolla,* Deputy Attorney General; and *Robert M. Maurer,* Assistant Deputy Attorney General, for the Secretary of Welfare.

*Warren W. Holmes* and *Edward A. Collins,* for the General State Authority.

SOHN, J., October 7, 1954.—The matter before us arises as the result of a bill in equity filed by plaintiffs, who are residents of Birmingham Township, Delaware County, Pa., to restrain the Secretary of Welfare, Alan D. Reynolds, the General State Authority, and its executive director, John N. Forker, from acquiring certain land in Delaware County, comprising approximately 514 acres, and from erecting on said land a State mental hospital. The bill is filed by plaintiffs as citizens of the Commonwealth and as taxpayers into the General Fund. It is essentially a taxpayers' bill.

The complaint alleges that the Secretary of Welfare has requested the General State Authority to acquire the particular property described in Birmingham Township, Delaware County, and that the General State Authority, with the approval of the Governor, has appointed appraisers to fix the fair value of the property, placing a ceiling price of $1,500 per acre thereon, and that plaintiffs believe that the appraisers are prepared to report to the authority.

A further allegation of the complaint is that certain moneys from the General Fund of the Commonwealth have been appropriated to the General State Authority and that the latter has already spent money in appraising the land and will, unless restrained, spend additional large sums in acquiring the land and building the hospital, and that plaintiffs are informed and believe that the sum of $19,000,000 is contemplated as the cost of the proposed acquisition of the land and the building of the hospital thereon. Plaintiffs further

allege that a similar State mental hospital is located approximately 10 miles from the proposed site, that there has been allocated to that hospital over $7,000,-000 for the enlargement of its facilities, that the new hospital will be a duplication thereof, and that the proposed site for the new hospital does not have an ample water supply and does not provide sewerage and drainage, and that it will not meet the needs of expansion within Delaware County in future years.

The complaint then goes on to allege that there is no authority in law for defendant, the Secretary of Welfare, to arrange with the General State Authority for the acquisition of the land or for the construction of a hospital thereon, and that there is no authority for the General State Authority to acquire the property and build the mental hospital, and that plaintiffs and other taxpayers of the Commonwealth of Pennsylvania will be irreparably damaged unless defendants are restrained from spending this money, and that plaintiffs bring this action on their own behalf and on behalf of all other taxpayers.

Defendants, the General State Authority and John N. Forker, have filed preliminary objections, as has the other defendant, Alan D. Reynolds. These objections are in the nature of demurrers. They refer to the Act of August 19, 1953, P. L. 1152, as the authority for the erection of a new State mental hospital and both refer to the Act of March 31, 1949, P. L. 372, 71 PS §1707, as authorizing the General State Authority to acquire land and construct an institution such as the mental hospital contemplated in this action.

The preliminary objections of both defendants also aver that plaintiffs have failed to state that they pay taxes into the funds of the General State Authority and question the rights of the plaintiffs to bring this action as taxpayers.

Twenty-two different residents of Birmingham Township, Delaware County, Pa., taxpayers into the General Fund of the Commonwealth of Pennsylvania, also petition to intervene as parties plaintiff. Defendants have filed answers to the petition averring that the proposed intervenors are in no different position than were original plaintiffs and that their interests are already adequately represented, and if they should be permitted to intervene the preliminary objections apply to them as well as to original plaintiffs.

Four separate questions seem to be involved by the filing of the above-described pleadings. They are as follows:

1. Are plaintiffs, as taxpayers, entitled to bring this class action on behalf of all taxpayers?

2. Does the title to the Act of August 19, 1953, P. L. 1152, "providing for the selection of suitable lands in Delaware County for the erection thereon of a new State mental hospital", clearly express the subject contained in the second paragraph of the act which provides for the acquisition of lands and the construction of a mental hospital?

3. Has the General State Authority any lawful power to acquire the lands in Delaware County and to construct thereon a mental hospital?

4. Should the petition of additional taxpayers to intervene as parties plaintiff be allowed?

With respect to the first question involved, plaintiffs aver only that they are "taxpayers of the Commonwealth paying taxes into the General Fund as well as into other funds of the Commonwealth of Pennsylvania." This is not enough. In this connection we must refer to the language of Mr. Justice Linn of the Supreme Court in Chester County Institution District et al. v. Commonwealth et al., 341 Pa. 49 (1941), where on page 64, he says:

"4. The taxpayers joining in the bill show no ground for equitable relief; *there is not even an averment that their taxes will be increased;* if the State takes over the operation and pays the bills the taxpayer plaintiffs will probably pay less, for the purpose, than they paid before. So far as the averment of *irreparable damage* is concerned, it is sufficient to say that the legislature had the power to pass the Act; *presumably, the legislature gave adequate consideration to the effect on the taxpayers of the county;* we find nothing authorizing the Court to say that the legislature exceeded its power on the ground suggested." (Italics supplied.)

Plaintiffs ask that defendants be enjoined "from expending moneys or obligating funds of the Commonwealth of Pennsylvania and/or of the General State Authority for the purpose of acquiring the land aforementioned or for erecting a mental hospital thereon."

In Naugle v. Vaux, Secretary of Health, 68 D. & C. 135 (1949), we have the well-considered and able opinion of Superior Court Judge Woodside, then a member of this court, that a taxpayer seeking to enjoin the expenditure of public funds must allege with particularity that he is a taxpayer to the very fund which he seeks to restrain. On page 140 he says:

"Since a plaintiff's right to maintain a taxpayer's bill 'depends entirely on whether he is a bona fide taxpayer' and rests solely upon 'the ground that his pecuniary interest has been invaded,' it must follow that he must be a taxpayer to the particular fund from which the alleged unlawful expenditure is to be made. As this is necessary to his right to maintain the bill he must allege it in the bill. See Equity Rule 34; Goslin, Admr., v. Edmunds, 325 Pa. 154, 159 (1937) ; Watkins and Miller v. Watkins et ux.,

101 Pa. Superior Ct. 426, 429 (1931). Not having done so, the preliminary objections to the bill must be sustained."

Plaintiffs have not alleged in their complaint, nor can they prove, any pecuniary interest in the authority's funds. The financing of authority projects, including the acquisition of land, is provided by the Act of March 31, 1949, P. L. 372. It is without question that such projects are financed from the proceeds of the authority's own bonds, and not by appropriations from the General Fund of the Commonwealth. In section 4(*p*) of The General State Authority Act of March 31, 1949, P. L. 372, the legislature specifically provides that:

". . . the Authority shall have no power at any time or in any manner to pledge the credit or taxing power of the Commonwealth . . . nor shall any of its obligations or debts be deemed to be obligations of the Commonwealth . . . nor shall the Commonwealth . . . be liable for the payment of principal of, or interest on, such obligations."

See Kelley v. Earle, 325 Pa. 337 (1937).

In addition, we have been unable to find that the legislature has passed any appropriation bill providing for the acquisition of the land in question or for the construction of a new State mental hospital in Delaware County. The acquisition of land for the construction of a hospital cannot be accomplished by way of any general appropriation bill which is limited by law to providing for the ordinary expenses of the executive, legislative and judicial departments of the Commonwealth. This is provided in article III, sec. 15, of the Pennsylvania State Constitution. Therefore, it must follow that it is not a fact, as alleged by plaintiffs in paragraph 8 of the complaint, that "Money of the Commonwealth of Pennsylvania, appropriated to the General State Authority from the

General Fund of the Commonwealth, has already been spent and large sums will be spent in the appraising and acquiring of said land and in the erection of a hospital thereon."

As a result, no expenditure of taxpayers' money is involved in the proposed acquisition of land and erection of a hospital, as complained by plaintiffs, and therefore plaintiffs as taxpayers of the Commonwealth have no standing to enjoin the General State Authority in this action. See annotation 131 A. L. R. 1230 under the heading *"Taxpayer's right to maintain action to enjoin wrongful expenditure of public funds, as affected by the fact that the funds in question were not raised by taxation."*

The second question before us goes to the constitutionality of the Act of August 19, 1953, P. L. 1152, under which the Department of Welfare selected lands in Delaware County for the erection thereon of a new State mental hospital. At the argument plaintiffs contended that the title of the act did not embrace the subject matter of the statute and, therefore, that it violated article III, sec. 3 of the Constitution of Pennsylvania, which provides that:

"No bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title."

The title of the Act of August 19, 1953, P. L. 1152, is as follows:

"Providing for the selection of suitable lands in Delaware County for the erection thereon of a new State mental hospital."

There can be no question that the act expressly provides for the selection of the land. But the title gives notice of something further for it states the purpose for which the selected lands are to be used, to wit, "for the erection thereon of a new State mental hospital." A reading of this title should put anyone

on notice that there was contemplated the erection of a new State mental hospital on selected lands in Delaware County. Once the lands were "selected", it follows that such lands would have to be first acquired before they could be used for the purpose announced by the legislature, which is "for the erection thereon of a new State mental hospital." We have considered this title in the light of the latest expressions of the Supreme Court of Pennsylvania with respect to the provisions of article III, sec. 3, of the Constitution of Pennsylvania. We refer especially to Lancaster City Annexation Case (No. 1), 374 Pa. 529, 532 (1953) ; Harrisburg v. Pass, 372 Pa. 318, 321 (1953) ; also to Commonwealth v. Fireman's Fund Insurance Co., 369 Pa. 560 (1952). In the latter case, we find this language in the opinion of the late Chief Justice Drew, at page 563:

"Article III, §3 of the Constitution states: 'No bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title.' The purpose of that section is to eliminate the so-called 'omnibus bills' and it is intended to operate to exclude from an act that which is secret and unrelated: *Commonwealth v. Stofchek*, 322 Pa. 513, 517, 185 A. 840; *Dailey v. Potter County*, 203 Pa. 593, 597, 53 A. 498. The inclusion of substantive matter entirely disconnected with the subject contained in the title renders it unconstitutional: *Soldiers and Sailors Memorial Bridge*, 308 Pa. 487, 490, 162 A. 309; *Com. ex rel. Schnader v. Liveright*, 308 Pa. 35, 82, 161 A. 697. On the other hand, things incidental to the real subject of the act need not be recited in the title: *Sloan v. Longcope*, 288 Pa. 196, 202, 135 A. 717; *Reeves v. Phila. Sub. Water Co.*, 287 Pa. 376, 386, 135 A. 362. Thus the title need not be an index of everything contained in the act: *Retirement Board v. McGovern*, 316 Pa. 161, 165, 174 A. 400; *Specktor v. Hanover*

*Fire Ins. Co.*, 295 Pa. 390, 393, 145 A. 430; *Common-wealth ex rel. v. Dale Boro*, 272 Pa. 189, 191, 115 A. 873. It is sufficient to satisfy the constitutional requirement if the title will lead a reasonably inquiring mind into the body of the act: *Commonwealth ex rel. White v. Miller*, 313 Pa. 140, 143, 169 A. 436; *Boocks's Petition*, 303 Pa. 363, 366, 154 A. 710; *Commonwealth v. Budd Wheel Co.*, 290 Pa. 380, 386, 138 A. 915."

Plaintiffs attack the title of the Act of August 19, 1953, in the sense that it does not reflect the provision for the acquisition of the selected site nor for the construction of the hospital. Broadly, the act relates to the erection of a new State mental hospital in Delaware County. "Acquisition" and "construction" are mere incidents to the real subject of the act. The act is not an "omnibus bill" for the provisions relating to the acquisition of the site and the construction of the hospital are not secret and unrelated to the title which relates to a new State mental hospital in Delaware County. The title puts any reasonably inquiring person on notice as to the contents of the act.

In this connection our attention has been called to Philadelphia Parkway Opening, 295 Pa. 538 (1929). There the constitutionality of the Act of June 7, 1915, P. L. 894, relating to the plotting of parks and parkways by cities of the first class, was upheld. The body of the act made certain provisions for the appropriation of land for public use and various other provisions not expressly mentioned in the title. In holding that the act did not violate the requirements of article III, sec. 3, of the Constitution of Pennsylvania, the court pointed out (page 543):

"The title of the Act of 1915 is sufficient to give notice of its contents. It is entitled an act 'relating to and regulating the plotting by cities of the first class of parks and parkways in built up sections thereof.' Section 1 of the act provides that placing a parkway

on a city plan shall be considered an appropriation of the land to public use at the expiration of five years from the date of such plotting unless an ordinance making an actual appropriation shall have been passed previous to the expiration of that time. Section 2 provides that the appropriation for public use of the land within the lines of a parkway already plotted or planned shall take effect at the expiration of three years from the approval of the act. The third section secures to property owners the right to alter buildings existing within the lines of the parkway in accordance with plans approved by the bureau of building inspection or other municipal authorities and authorizing them to recover damages for such alterations as of the date of appropriation. All these provisions are reasonably within the scope of the provisions of the title 'relating to and regulating the plotting . . . of parks and parkways.' Notice is thus given that it is the plotting of the parkways that is dealt with in the title of the act, and the limitation in section 1 is one of the incidents of plotting. All that is required in the title of an act is that it be sufficient to fairly give notice of its subject-matter so as to reasonably lead to an inquiry as to the provisions in the body of the legislation. A notice that the act related to and regulated the plotting of the parkway sufficiently covers the provision controlling the effect of the plotting and the time within which that act should be deemed an actual taking of the land included in the improvement."

When a comparison is made of the Parkway case with the case at bar, it is reasonable to say that the "plotting" of the Parkway is analogous to the "selection" of the hospital site in Delaware County under the Act of 1953, and that the "appropriation" of the land in the Parkway case, which was not specifically mentioned in the title of the act in that case, is similar to the "acquisition" of the selected site in Delaware

County under the Act of 1953. In the title of the Act of 1953, there is a clear reference to the erection of a new hospital, so by analogy it must reasonably follow that the Parkway case is clear authority for finding that the Act of 1953 does not violate article III, sec. 3, of the Constitution of Pennsylvania. Moreover, with respect to attacking the constitutionality of the statute, we must point out that in the complaint there is only a general averment of "irreparable damage" and that this averment is most vague, not supported by any particular averments with respects to the damage, and is of no significance. For this additional reason, plaintiffs are in no position to attack the constitutionality of the statute: Mesta Machine Co. v. Dunbar Furnace Co., 250 Pa. 472; Gentile v. Philadelphia & Reading Railway Co., 274 Pa. 335; Reeves v. Phila. Suburban Water Co., 288 Pa. 418, and Commonwealth v. Meyers, 290 Pa. 573.

We turn now to the question of whether the General State Authority has any lawful power to acquire the lands in Delaware County and to construct on those lands a mental hospital. The legislature in passing the Act of August 19, 1953, P. L. 1152, has directed to be done the very thing which plaintiffs in this action seek to enjoin. This act is entitled: "Providing for the selection of suitable lands in Delaware County for the erection thereon of a new State mental hospital." It provides as follows:

"Section 1. The Department of Welfare, with the approval of the Governor, shall select, for acquisition by the Department of Property and Supplies, in the name of the Commonwealth, suitable lands in Delaware County for the erection thereon of a new State mental hospital. Such lands shall provide ample water supply and be capable of adequate sewerage and drainage, and the acreage obtained shall be sufficient for the

most productive agricultural employment of the inmates.

"The Department of Welfare may, with the approval of the Governor, arrange for the acquisition of the lands or the construction of the hospital by the General State Authority, or both acquisition and construction may, with the approval of the Governor, be arranged for with the General State Authority."

Paragraphs 4 and 5 of plaintiffs' complaint aver that the Secretary of Welfare has selected the land in Birmingham Township and that his request to the State authority to acquire the land and to erect thereon a State mental hospital has been approved by the Governor. This is precisely what the act has directed to be done. It is hard to understand the legal conclusions reached in paragraph 7 of plaintiff's complaint, wherein it is averred that there is no authority in law for the Secretary of Welfare "to arrange with the General State Authority for the acquisition of said land or for the construction of a mental hospital thereon" in the light of the statute. Moreover, the legislative intent to build a new mental hospital in Delaware County is confirmed by the Act of July 27, 1953, P. L. 596, increasing the borrowing capacity of the General State Authority, wherein it is provided, inter alia:

"Section 2. The proceeds of this increased borrowing capacity shall be allocated approximately as follows: Embreeville State Hospital (increased capacity) . . .

"New mental institution, Delaware County."

The passage of this latter act clearly indicates that the legislature recognized the acute and growing need for increased mental health facilities *both* at the existing Embreeville State Hospital and at the new hospital to be erected in Delaware County. Accordingly, it increased the borrowing capacity of the General State

Authority so as to provide for both an increased capacity at Embreeville and, in addition, a new State mental hospital in Delaware County.

However, even without the express statutory directive in respect to the new mental hospital in Delaware County, the General State Authority has ample power to acquire land and to construct a State institution thereon under the Act of March 31, 1949, P. L. 372, which created the authority. Therein it is provided:

"Section 4. Purposes and Powers; General.—The Authority is created for the purpose of constructing, improving, equipping, furnishing, maintaining, acquiring, and operating sewers, sewer systems, and sewage treatment works for State institutions of every kind and character (heretofore or hereafter constructed), public buildings for the use of the Commonwealth, . . . State institutions of every kind and character (heretofore or hereafter constructed), . . . (any and all the foregoing being herein called 'projects') . . . and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including, but without limiting the generality of the foregoing, the following rights and powers: . . .

"(d) To acquire, purchase, hold, and use any property, real, personal or mixed, tangible or intangible, or any interest therein necessary or desirable for carrying out the purposes of the Authority, . . .

"(e) To acquire by purchase, lease, or otherwise, and to construct, improve, equip, furnish, maintain, repair, and operate projects. . . .

"Section 12. Acquisition of Lands.—The Authority shall have the power to acquire, by purchase or eminent domain proceedings, either the fee or such right, title, interest, or easement in such lands, as the Authority may deem necessary for any of the purposes mentioned in this act: . . ."

This act, just above quoted, gives to the General State Authority ample authority in law to acquire the lands in Delaware County selected by the Department of Welfare, as a site for the new State mental hospital.

We must also come to the conclusion that the selection of the hospital site in Delaware County by the Department of Welfare is not subject to judicial review. Paragraph 4 of the complaint avers that:

"Prior to March 2, 1954, defendant, Alan D. Reynolds, as Secretary of Welfare, requested the General State Authority to acquire certain land in Delaware County, comprising approximately 514 acres in Birmingham Township."

Paragraph 5 of the complaint avers that:

". . . the defendant, John N. Forker, addressed a letter to the General State Authority requesting said authority to purchase the aforesaid land and indicated that this met with the approval of the Governor of the Commonwealth of Pennsylvania."

We must assume, therefore, that the Secretary of Welfare, acting for his department, exercised his discretion in the selection of the site before requesting the General State Authority to acquire the same as is averred in the complaint. We find there is no suggestion in the bill of complaint that the Secretary of Welfare has *abused* his discretion and that no other reason is alleged requiring equitable relief except that defendants acted without authority. We have already found that they have that authority. Therefore, there is no reason for us to interfere with or review the exercise of the discretion of the Secretary of Welfare in making the selection of the site. The selection of the site is a legislative and not a judicial function and the particular selection made here will not be enjoined at the instance of the taxpayers. In Downing v. Erie City School District et al., 360 Pa. 29, 34 (1948) it is held:

"It is, of course, to be borne in mind that the judicial power to interfere in cases challenging acts of a character committed to the discretion of public officials is exceedingly limited. Indeed, there is a presumption that their actions are within the limits of their discretion: *Lamb v. Redding*, 234 Pa. 481, 484, 83 A. 362; *Gemmell v. Fox*, 241 Pa. 146, 150, 88 A. 426; *Robb v. Stone*, 296 Pa. 482, 492, 146 A. 91. 'The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited, and they are permitted to interfere only where it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice . . . if the facts admit of no other conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, the law will regard it as an abuse of power, a disregard of duty, and it becomes the duty of the courts to interfere for the protection of the public': *Lamb v. Redding*, supra, at pp. 484-485. But, at the same time, the law does not assume to supervise an exercise of judgment by public officials in appropriate regard."

This pronouncement has been followed in other States. Drenning v. Board of Commissioners of City of Topeka, 148 Kan. 366, 81 P. 2d 720 (selection of site by city council for public buildings) ; Jardine v. City of Pasadena, 199 Cal. 64, 248 Pac. 225 (selection of site for contagious disease hospital by municipal authorities, not enjoined) ; Gibson et al. v. City of Baton Rouge, 161 La. 637, 109 So. 339 (selection of site for public garbage disposal plant is essentially legislative, and not judicial). In this connection the legislature by the Act of July 27, 1953, P. L. 596, has expressly authorized the General State Authority to allocate part of the proceeds of its increased borrow-

ing capacity, not only for the construction of a new mental hospital in Delaware County, but to increase the capacity of the existing Embreeville State Hospital. This is a clear indication that the legislature was fully aware of the need for increased mental health facilities, not only in Chester County but likewise in Delaware County. We think that we must take judicial notice of the great industrial development which is now taking place in the Delaware Valley.

In considering the bill of complaint filed in this case, we fail to find also that plaintiffs have set forth the appropriation by the legislature which makes available any moneys to be expended for the selection of the ground or the erection of the hospital. As we have heretofore pointed out, we can find no such appropriation in the statutes. The Pennsylvania Constitution provides in article III, sec. 16, that:

"No money shall be paid out of the treasury, except upon appropriations made by law, and on warrant by the proper officer in pursuance thereof."

Acquisition of land and the construction of a hospital would not be an ordinary expense. Such is always the subject of a separate bill. To conclude otherwise would contravene article III, sec. 15, of the Pennsylvania Constitution which provides:

"The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the Commonwealth, interest on the public debt and for public schools; all other appropriations *shall be made by separate bills*, each embracing but one subject." (Italics supplied.)

It is axiomatic that if no money is made available, it is impossible to expend such money. Therefore, if no money has been appropriated by a special bill, taxpayer plaintiffs in this case cannot be injured. Moreover, the General State Authority secures funds for

its operation through borrowing powers and the issuance of its own bonds.

In view of what we have already said, we deem it unnecessary to say anything in this opinion about the intervention of other parties plaintiff as intervenors.

Accordingly, in view of all that we have said heretofore, we make the following

### Decree

And now, October 7, 1954, the objections filed by all of the defendants herein are hereby sustained, the complaint is dismissed at the cost of plaintiffs, and judgment is hereby entered in favor of defendants and against plaintiffs.