Opinion of Court below—Opinion of the Court. [241 Pa.

distribution of the fund arising from the leasing of the coal under the real estate devised by the quoted portion of the will, we have no hesitation in following his ruling which is as follows: 'We think this case is ruled by Kirby's Est., 235 Pa. 542. Mary G. Meyers took an estate in fee tail which under the Act of April 27, 1855, P. L. 368, was enlarged to a fee simple.'

By adopting this ruling, the reasoning in Kirby's Estate is necessarily adopted and further discussion on our part is unnecessary.

We therefore direct that judgment be entered against the defendant in favor of the plaintiff in the sum of Three Thousand Nine Hundred Dollars and costs of suit.

*Error assigned* was the judgment of the court.

*L. A. Dymond,* for appellant.

*W. H. Hines,* for intervenors.

*W. Alfred Valentine,* with him *B. W. Davis,* for appellee.

PER CURIAM, May 19, 1913:

This judgment is affirmed on the opinion of the court below directing it to be entered.

---

# Gemmell, et al., v. Fox, et al., Appellants.

*School law—Directors—Equity—Preliminary injunction—Abuse of discretion.*

1. A preliminary injunction will be awarded in a taxpayers' suit to restrain defendant school directors from acquiring a certain plot of ground for the erection of a school house, where the evidence shows that an additional room to an existing house would be sufficient to accommodate all the pupils of the school district for

several years to come; that another lot equally desirable had been offered without cost to the school directors; that the lot proposed to be acquired overlaid coal beds owned by a corporation, without responsibility for supporting the ground above, and that to purchase the right of support from the owners of the coal would cost a large sum of money. Where the court is satisfied that the school directors are influenced by other considerations than the public interest in the proposed action, a preliminary injunction will be issued.

2. Where there is apparently sufficient ground for the action of the court below in awarding a preliminary injunction, it will not be disturbed on appeal; the status quo will be preserved until final hearing.

Argued April 23, 1913. Appeal, No. 103, Jan. T., 1913, by defendants, from order of C. P. Clearfield Co., In Equity, Sept. T., 1912, No. 4, continuing a preliminary injunction until final hearing on bill in equity in case of Thomas Gemmell, William David, George W. Stiles, S. J. Mountz, Howard E. Fulkerson, Clifford C. Fulkerson, Seth V. Davis, D. H. Kornman, W. R. Gallagher v. George W. Fox, Ira Nevling, James Mooney, David Miller, Thomas Gallagher, comprising the Board of School Directors of the School District of Gulich Township. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to restrain school directors from acquiring land for school purposes.

HOLT, P. J., specially presiding, filed the following opinion:

The plaintiffs in this case are citizens and taxpayers of the Township of Gulich, in the County of Clearfield, and the defendants are the duly elected and qualified school directors of the school district of Gulich Township, in said county.

The bill in this case was filed to restrain the defendants, as such school directors, from acquiring, by condemnation or otherwise, twelve certain lots or pieces of

ground in the village of Janesville, in said township, for school purposes. The property proposed to be taken by the defendants is seven or eight hundred feet distant from the present school property in Janesville, which consists of a plot of ground 120 feet in width and 200 feet deep, on which is erected a frame school house containing two rooms. The building is two stories in height, and occupies but a small part of the lot. On either side of the present school ground there is land which can be had at reasonable rates for school purposes; and, in fact, a taxpayer in the township has offered to donate to the school district a lot 60 feet wide and 200 feet deep adjoining the said school property, for school purposes. The property proposed to be taken by the defendants for school purposes is underlaid with coal, there being four or five different veins; and one of the veins, which is workable, lies within 30 feet of the surface.

According to the evidence the coal under this plot of ground is owned by a coal company, with the right to mine all of the coal underlying the surface without liability for damages to the surface, while the surface is owned by others. The value of this property, exclusive of the coal and mining privileges, is about twenty-four hundred dollars, while the evidence shows that the damage to the coal tract of which the premises in question constitute a part, if the owners of the coal should be required to leave it for support, would be anywhere from four thousand to five thousand dollars, thus making a probable cost to the school district of anywhere from five thousand four hundred to seven thousand four hundred dollars. The primary object of taking this land was for the purpose of building thereon a high school building, which object was soon abandoned by the defendants, and this, doubtless, for the reason that for a period of eleven years last past but twenty-two pupils in the schools of Gulich Township passed the eighth grade, which is necessary to admit pupils to the

high school, or, in other words, an average of two pupils per year. One of the defendants when on the stand testified that the ground sought to be acquired would not be useful to the school district except for high school purposes. According to the minutes of the board of directors, the idea of acquiring the property for high school purposes was abandoned. It was then proposed to take the property for school purposes, generally, with the idea of erecting thereon a small building, with one room, for immediate use. The evidence showed that the two school rooms in Janesville are somewhat crowded, and that another room is necessary to accommodate the pupils. The evidence also shows that it is the intention of the defendants to erect a new school building at a place called Fernwood, a short distance from Janesville, and from which territory a number of pupils in attendance at the schools in Janesville come, and which, if erected, would take a considerable number of pupils from the Janesville school to that location. The evidence further shows that if such building should be erected there would be no necessity for an additional school room at Janesville for years to come. The evidence, which is uncontradicted, is to the effect that if one additional room should be added to the present school building, even though the new building should not be erected at Fernwood, it would be ample to accommodate the pupils attending school at Janesville for a number of years. The evidence also tends strongly to prove that the prospects for an increase in population at Janesville are not very promising, the town being a mining town, with the likelihood that the coal will be exhausted at that place before many years. There is the testimony of a large number of witnesses to the effect that there is no necessity, whatsoever, for the acquisition of this ground for school purposes, and that it would be a waste of school funds, and a burden on the taxpayers without any corresponding benefits to be derived therefrom. There is nothing in the evidence to

show that the present site is not sufficient in size for the
erection of another room in connection with the present
building.   Neither has it been shown that the present
location is unsuitable for school purposes.   Nor does it
appear that there is any proposition to abandon the
present site, or that there are any considerations affect-
ing the public health making it necessary to acquire the
land proposed to be taken.   Neither is there any evi-
dence tending to show that the adoption of the new site
would result in advantages bearing any reasonable pro-
portion to the expenditure required.

It is to be presumed, however, in the absence of any-
thing to the contrary, that the school directors are
acting within the limits of the discretion with which
they are entrusted.   The power of the courts to inter-
fere with school directors in the performance of their
duties is exceedingly limited; and they are permitted
to interfere only where it is made apparent that it is
not discretion that is being exercised but arbitrary will
or caprice.   Discretion involves the exercise of judgment
incidental to the proper performance of the duty dele-
gated.   When the contention is that the proposed action
is unwise, no matter by what consensus of opinion it is
shown, the law will refer it to mistaken judgment over
which it has no supervision.   But if it cannot be so re-
ferred, if the facts admit of no other conclusion than
that the determination of the board has been influenced
by other considerations than the public interests, no
matter what these may have been, the law will regard it
as an abuse of power, and disregard of duty, and it be-
comes the duty of the courts to interfere for the protec-
tion of the public: Lamb v. Redding, 234 Pa. 481.   In-
asmuch as under the evidence it is shown that one ad-
ditional room will be sufficient to accommodate the
pupils of Janesville for a period of years to come, we
feel that the probable expenditure of the amount neces-
sary to acquire the property in question, and in view of
the further fact that under the uncontradicted evidence

the property at present owned by the school district in Janesville, and in view of the further fact that the land adjoining the present school property may be had without cost to the district, we feel that the determination of the school board to acquire the property in question is influenced by other considerations than the public interest, and that it would be an abuse of discretion on the part of the defendants to acquire, under the circumstances, the property in question. It may be that upon final hearing, when we have the benefit of the testimony on the side of the defense, a different conclusion will be reached. But as the case now stands, we are satisfied that the preliminary injunction should be continued until final hearing.

An order was entered in accordance with this opinion. Defendants appealed.

*Error assigned,* among others, was the order of the court.

*J. J. Kintner,* for appellants.

*A. M. Liveright,* for appellees.

PER CURIAM, May 19, 1913:

There is nothing in this case to take it out of the established rule that a preliminary injunction will not be disturbed where there was apparently sufficient ground for the action of the court below in awarding it. In the present case the learned chancellor said, in continuing the injunction, that, upon final hearing, when he would have the benefit of testimony on the part of the respondents, he might reach a different conclusion. Let the status quo remain until that hearing.

Appeal dismissed at appellants' costs.