## Downing *v.* Erie City School District et al., Appellants.

30

Argued May 26, 1948.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. W. English,* with him *English, Quinn, Leemhuis & Plate,* for Insurance Companies, appellants.

*William J. Carney,* with him *Carney & Carney,* for Erie City School District, appellant.

*Gerald A. McNelis,* for plaintiff, appellee.

OPINION BY MR. JUSTICE JONES, July 6, 1948:

These appeals raise two main questions,—(1) the jurisdiction of equity to enjoin administrative action of a duly constituted school board and (2) if such jurisdiction exists, whether its exercise is warranted on the basis of the matters set forth in the bill of complaint.

The suit is by a taxpayer of the school district of the City of Erie and seeks to restrain and enjoin the school directors of the district from accepting and retaining certain policies of insurance on school district property. The premiums on the policies have already been paid out of funds of the district.

The gravamen of the plaintiff's complaint is that the policies in question are void because of the inclusion in the insuring clauses of certain provisions for extended coverage allegedly beyond the charter powers or, at least, the lawful competency, in general, of the various foreign and domestic issuing companies. The particular insurance companies thus indirectly involved were, upon

application, permitted to intervene as parties defendant. After a hearing, the chancellor entered an adjudication and a decree nisi awarding an injunction as prayed for by the plaintiff. Subsequently, at the suggestion of the court, all parties in interest entered into a stipulation approving two of the domestic companies (Merchants & Businessmen's Mutual Fire Insurance Company and the Washington County Fire Insurance Company) and two of the foreign companies (The Central Manufacturers' Mutual Insurance Company and the United Mutual Fire Insurance Company) as typical of all of the intervening defendants and qualified to act in behalf of all such defendants in any proceedings thenceforth to be taken in this litigation.

The learned chancellor made a supplemental adjudication, embracing findings of fact and conclusions of law, the effect whereof was to establish the following situation. While the companies, whose policies are involved, are authorized and empowered to issue the basic fire insurance coverage of the policies in question, the extended coverage endorsement in each instance against damage by hail is beyond the legal authority of the issuing companies and, therefore, void; the basic policies were not, however, invalidated. And, further, while the nonassessable provisions in the policies issued by United Mutual Fire Insurance Company are accordingly void, the policies in reality are valid as being actually assessable. A decree nisi was thereupon entered, restraining and enjoining the school district from accepting and retaining the assailed policies of insurance on the ground that the action of the school board in the premises constituted an abuse of discretion. All parties, including the plaintiff, filed exceptions; and, after argument thereon, the court en banc made several additional findings of fact and conclusions of law, modified others previously made, and ruled in presently material regard, *contra* the learned chancellor, that the fire insurance policies, including the impeached extended coverage provi-

sion, are nonseverable and form, in each instance, but a single contract; that the policies are void in their entirety for the reason that the extended coverage provisions are *ultra vires* as to the insuring companies or are not within the activities authorized by the respective companies' certificates to do business in Pennsylvania; and that an injunction should issue restraining the school district from retaining the disputed policies. From the final decree to that effect, the present appeals were taken by the school district and by three of the four intervening defendants (stipulated as the active representatives of all of the intervening seven companies). The Merchants & Businessmen's Mutual Fire Insurance Company did not appeal. All of the questions presented by the appellants have been discussed and passed upon by the court below at some stage of the proceeding, but, in the circumstances, they will again require separate consideration and treatment.

Equity will intervene to restrain acts of municipal authorities which are contrary to positive law or amount to bad faith or constitute a violation of public duty: see *Wilson v. Philadelphia School District,* 328 Pa. 225, 239, 195 A. 90, and cases there cited. Obviously, the occasion for an exercise of the jurisdiction depends largely upon the character of the conduct complained of in the particular instance. The present bill makes out a proper case for equity's jurisdiction. The averments disclose what is tantamount to a misappropriation of the funds of the school district through the directors' voluntary purchase of allegedly invalid insurance policies. If that be so, then their action amounts to a direct transgression of the law and is not a mere abuse of administrative discretion. Nor does the court's jurisdiction depend upon the complainant's ability at trial to make good his averments. Where a case for equity's jurisdiction has been sufficiently pleaded, the jurisdiction is not defeated by a possible adverse outcome: *Zerbe Township School District v. Thomas,* 353 Pa. 162, 165-166, 44 A. 2d 566.

It is, of course, to be borne in mind that the judicial power to interfere in cases challenging acts of a character committed to the discretion of public officials is exceedingly limited. Indeed, there is a presumption that their actions are within the limits of their discretion: *Lamb v. Redding,* 234 Pa. 481, 484, 83 A. 362; *Gemmell v. Fox,* 241 Pa. 146, 150, 88 A. 426; *Robb v. Stone,* 296 Pa. 482, 492, 146 A. 91. "The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited, and they are permitted to interfere only where it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice. . . . if the facts admit of no other conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, the law will regard it as an abuse of power, a disregard of duty, and it becomes the duty of the courts to interfere for the protection of the public": *Lamb v. Redding,* supra, at pp. 484-485. But, at the same time, the law does not assume to supervise an exercise of judgment by public officials in appropriate regard. As stated in *Roth v. Marshall,* 158 Pa. 272, 274, 27 A. 945,—"For an abuse of discretion or an act contrary to law the remedy is in the common pleas. But for a mistake in judgment as to the time or manner of performance of their official duties they are answerable to the constituency that elects them." In the present instance the particular matter complained of is hardly a subject for discretion even though the question of carrying insurance (and how much) and the choice of insuring companies are discretionary. With those matters settled, it was obligatory upon the school board to obtain legally valid and enforceable policies in return for the public moneys they expended by way of premiums paid on the policies accepted. As the learned chancellor pointed out in the

original adjudication, while courts will not interfere with the exercise of discretionary powers by public officials, if it appears that their action is based on a misconception of law or is the result of arbitrary will or caprice, equity will intervene to prevent an abuse of the entrusted power adverse to the public welfare: *Hibbs v. Arensberg*, 276 Pa. 24, 26, 119 A. 727. Even if the acts presently under attack should be deemed merely exercises of discretion, once it appears that they were based on a "misconception of law", as the chancellor and the court en banc both concluded they were, equity looks with favor upon the questioning inquiry. For a further consideration of the decisions relative to the court's power to review and correct the actions of a school board, see *Ritzman v. Coal Township School Directors*, 317 Pa. 271, 276-278, 176 A. 447; also *McLaughlin v. Lansford Borough School District*, 335 Pa. 17, 23, 6 A. 2d 291.

The appellant's incidental attack on the plaintiff's standing to complain is without merit. The bill avers his ownership of real estate (situate within the school district of Erie) which is subject to taxation by the district. The complaint is essentially a class bill and, properly so, having been filed not only in behalf of the plaintiff but "for and on behalf of any citizen of Erie [the confines of the district] . . .": cf. *Gericke v. Philadelphia*, 353 Pa. 60, 63, 44 A. 2d 233. For the restraint of wrongs committed by municipal officers against the public interest, a taxpayer "is accorded a standing in equity because of the reason that he is a taxpayer and that if municipal funds are misappropriated he will be injured pecuniarily, and not upon the ground that he is simply a citizen or an inhabitant or an elector. The invasion of his pecuniary interests is the special injury that gives him a standing to maintain a bill": *Wolff Chemical Company v. Philadelphia*, 217 Pa. 215, 218, 66 A. 344. In the case last cited, Mr. Justice MESTREZAT, speaking for this Court, said that, "In the Pennsyl-

vania cases, the ground for sustaining the bill is said
to be 'that the interest of a taxpayer, when money is
to be raised by taxation, or expended from the treas-
ury, is sufficient to entitle him to maintain a bill to
test the validity of the law which proposes the assess-
ment or expenditure.' " That the diversion, wasting or
misappropriation of municipal funds involves such pe-
cuniary injury to an individual taxpayer as to bestow
upon him a standing to complain, there is, of course, no
doubt: see *Wilds v. McKeesport City School District,*
336 Pa. 275, 278, 9 A. 2d 338. Whether the policies in
the present instance are actually void and, consequently,
a manifest wasting of municipal funds, are matters of
merit to be discussed hereinafter. However, on the
face of the bill with its averments of municipal loss and
the plaintiff's interest therein, his standing to complain
is not open to question. His right in such regard is no
more dependent upon the ultimate outcome than is the
jurisdiction of the court in the first instance: cf. *Zerbe
Township School District v. Thomas,* supra.

Coming to the merits, the first question is whether
the contested fire insurance policies, together with the
extended coverage endorsements thereon, are to be con-
strued as entire contracts or whether they are sever-
able, i. e., is each basic fire insurance coverage a separate
undertaking of the insurer distinct from the risks in-
cluded in the extended coverage endorsements. There
appears to be a difference of opinion among the au-
thorities on this point: see Corpus Juris Secundum,
Insurance, Vol. 44, Sec. 336, p. 1284. Some hold that
insurance policies, as well as ordinary contracts, are
generally to be treated as entire and indivisible, es-
pecially where the consideration or premium paid is
single and entire and not allocated to various risks.
The early Pennsylvania cases (see, e. g., *Gottsman v.
The Pennsylvania Insurance Company,* 56 Pa. 210,
214-215) seem to favor that view, but each of those
cases involved a single risk, for example, fire, usually

upon various properties or different types of components; none was concerned with the coverage in one instrument of insurance against different types of risk or hazard. Other authorities adopt the view that insurance contracts, ostensibly entire, may be treated as divisible and severable, depending upon the circumstances attending their issuance, the manifest intent of the parties and the items covered,—the legal effect being a separate insurance obligation respectively on each of the individual risks covered. The court below treated the policies in dispute as being entire for the reason that a single premium charge was paid for each policy. But, it is our view that the extended coverage endorsement incident to these standard fire insurance policies are to be considered as separate and distinct undertakings of coverage against the respective risks specified. This, we believe to be in furtherance of the intent of The Insurance Company Law (Act of May 17, 1921, P. L. 682, Sec. 522, as amended, 40 PS §657) wherein it is provided that, in addition to the types of risks permitted to be included in the Standard Fire Insurance Policy of the State of Pennsylvania, authorized companies may issue "(g) Appropriate forms of supplemental contract or contracts, or extended coverage endorsements, . . ." upon approval of the Insurance Commissioner. The clear indication of the statutory provision just quoted is that the standard policy and the added provisions or extended coverages are to be deemed separate and divisible undertakings. Such being the case, the policies of fire insurance here involved, are valid, certainly to the extent of their basic undertakings and their additional coverages also, passing for the moment the coverage against hail. No *enjoinable* fault is, therefore, to be attributed to the school directors with respect to the insurance policies in suit.

There is still the question as to whether the extended coverage against loss by hail is actually invalid. Each of the foreign insurance companies involved had charter

powers or was authorized by the statutory law of the State of its domicile to write the insurance embraced by the extended coverage provision. The only discrepancy was that the certificates of the respective foreign companies to do business in Pennsylvania, as issued by the Insurance Commissioner, failed or omitted to mention the inclusion of authority to issue insurance covering loss or damage from hail,—the type of insurance included in the extended coverage endorsements under consideration. Admittedly, the domestic companies lacked express charter power to issue policies of insurance against damage from hail; and the court below ruled that authority in such regard was in no way granted either expressly or impliedly by statutory provision. Consequently, those policies were held to be void, the court treating the contracts as being entire.

Insofar as the foreign insurance companies are concerned, however, the issuance of the extended coverage endorsements against hail was not *ultra vires*. Those companies merely failed to comply strictly with the Pennsylvania statute regulating the transaction of business by foreign insurance companies within the State. And so, by virtue of a noncompliance, obviously inadvertent rather than intentional, with the statute relative to doing business in this State, the foreign companies lacked authority to transact the underwriting business in a single particular for which risk they had actually issued coverage although in all related particulars they had express authority so to act. It is well-settled that, in such circumstances, the company is estopped, as against innocent purchasers, from denying its authority to transact business in the foreign State. The Pennsylvania decisions are in accord with this doctrine. In *Swan v. Watertown Fire Ins. Co.*, 96 Pa. 37, 42, it was stated that,—"These [foreign insurance] companies doing business in this state without having complied with the provisions of the statute, for that reason, may not enforce their contracts; but cannot set up their turpitude

to defeat actions on their contracts brought by innocent persons. Their agents may neglect to procure the prescribed certificates, but that shall not avail the principals to avoid their contracts for insurance. The statute does not impose upon the insured the duty of seeing that the insurer and its agents have complied with the statutory requirements. That a company soliciting and receiving the consideration for insurance, may avoid its obligation on the ground that either itself or its agent has violated the law, is a proposition repugnant to familiar elements of the law." See also *The Watertown Fire Insurance Co. v. Simons,* 96 Pa. 520, 526. Accordingly, the extended coverage under the policies issued by the foreign companies in the instant case can be fully enforced in appropriate circumstances. The companies are estopped as a matter of law from setting up their failure to comply with the registration statute. In passing, it is only fair to note in this connection that the appellant insurance companies themselves expressly affirm the validity of the disputed policies both as to their basic insurance and their extended coverages. It is beyond reasonable dispute that the school board obtained valid and binding policies of insurance enforceable with respect to every risk covered thereby whether by the basic policy or the endorsements thereon. The school directors did not, therefore, act with any disregard of the duties of their office or in a way inimical to the interests of the taxpayers of the school district. So much applies to the policies issued by the foreign insurance companies.

We have then to consider whether the extended coverage provisions endorsed on the policies issued by the domestic insurance companies are equally enforceable. Such insurance being in excess of the charter and corporate powers of the domestic companies would seem to constitute *ultra vires* acts. The learned court below so considered them and accordingly concluded that the policies were void, relying particularly on certain cited Pennsylvania cases (inter alia *Arrott v. Walker,* 118

Pa. 249, 257, 12 A. 280) and, to some extent, upon the Act of February 4, 1870, P. L. 14. It is true that, under that Act and the cited cases construing it, unauthorized policies of insurance were held to be void, and no action thereon could be maintained successfully. However, the Act of 1870 was specifically repealed by The Insurance Company Law of 1921, cit. supra. Section 107 of the latter Act (40 PS § 367) is now the general provision in relevant connection; it is concerned with the prohibition of individuals, associations and partnerships from doing insurance business, penalties being specified for violations. But, in no way does that Act declare any policies absolutely void as did the Act of 1870. It was the apparent intent of the legislature that the matter be left open for appropriate judicial inquiry and adjudication as occasion might require. The three cases cited in the opinion of the lower court to the purported effect that *ultra vires* contracts of insurance are void since the passage of the Act of 1921 as amended are readily distinguishable from the instant case. In those cases, agreements, which were construed to be "contracts of insurance", had been executed by undertaking establishments having no actual or apparent authority to conduct an insurance business. In the present instance the companies possessed the legal power to write insurance and to the ordinary innocent customer they would appear to have authority to issue the insurance as written. The instant case falls within the rule that a corporation which has received and retained the benefits and advantages of a contract should not be allowed to escape its obligations upon a plea of *ultra vires,* especially if the contract does not contravene any statute or public policy: see Couch, Cyclopedia of Insurance Law, Vol. 1, Section 248, p. 584. Such a rule has been adopted in this State with respect to business corporations generally: see *Presbyterian Board v. Gilbee,* 212 Pa. 310, 314, 61 A. 925, and the Act of May 5, 1933, P. L. 364, Section 303, 15

PS § 2852-303. While there is no case which specifically applies the rule to insurance companies, no good reason can be advanced why it should not be applied to them as well as other business corporations. The character of business which they conduct is of a vital public concern; and, from the nature of the governmental regulation to which they are statutorily subjected, it is apparent that the primary intent of the legislature is the safeguarding of the rights of the public and their individual dealings with insurance companies. Consonantly, rules favoring the insured are preferred. Inasmuch as there is no statute in this State rendering *void* such *ultra vires* contracts of insurance (of domestic companies), as are here involved, it seems logical that the rule above quoted be presently applied and the issuing companies be held estopped from asserting a defense of *ultra vires* to any action upon the policies. And, here, likewise, the school directors, having obtained valid and enforceable policies in return for the funds expended, are not chargeable with censurable conduct.

It may be that the extended coverage endorsement issued by the Washington County Fire Insurance Company was not actually *ultra vires* for the reason that, although its charter did not expressly authorize it to write the character of insurance contained in the extended coverage, The Insurance Company Law of 1921 seems to have supplied that deficiency. The Washington County Fire Insurance Company so contends; and it has clearly set forth in its brief the reasoning in support of that contention. But, without passing upon that point, we choose to rest the validity of the extended coverage insurance issued by the domestic companies upon the ground of estoppel.

The decree is reversed, the costs on these appeals to be borne one-half by the appellee and the other half by the intervening defendants jointly.