## Collins v. Lloyd et al.

*Ralph J. Johnston* and *Roy B. Pope*, for plaintiff.

*R. Lawrence Coughlin*, county solicitor, and *Donald Mills*, assistant county solicitor, for defendants.

PINOLA, J., April 24, 1951.—Thomas J. Collins brought a bill for himself and other taxpayers to re-

strain the county commissioners from purchasing certain envelopes from the Square Printing Company.

From the testimony it appears that the county commissioners advertised for bids on supplies in connection with veterans' voting, including envelopes. These were opened at 10 o'clock on March 13, 1951.

Thomas J. Collins was found to be the low bidder on the envelopes. He agreed to furnish no. 10 envelopes at $7.35 per thousand, no. 9 envelopes at $7 per thousand, and no. 6 ¾ envelopes at $5.30 per thousand.

Before the contract was let it was discovered that the request for bids on the envelopes should not have been made because the Square Printing Company had a contract with the commissioners, dated March 6, 1950, to furnish all envelopes required by them up to and including March 31, 1951.

The commissioners having in the request for bids given notice that they reserved the right to reject any and all bids, rejected the bid of plaintiff, and directed the purchasing agent to order 26,000 envelopes for military ballots from the Square Printing Company under the provisions of the existing contract.

Plaintiff contends that the contract does not provide for furnishing more than one lot of 5,000 envelopes, that the attempted order of 26,000 at the price of lots of 5,000 is therefore illegal, and that the purchase of the 26,000 envelopes at the rate provided in the contract for lots of 5,000 constitutes a waste of taxpayers' money.

Under date of March 6, 1950, following advertisement for bids and receipt of the same, the county commissioners awarded a contract to the Square Printing Company, in which the latter agreed to furnish and deliver to the county for a period of one year from April 1, 1950, to and including March 31, 1951, "according to specifications and proposal attached and made part hereof," no. 10 white wove envelopes as follows: For

1,000, $16, for 3,000, $31, and for 5,000, $45; no. 9 white wove envelopes as follows: For 1,000, $14, for 3,000, $30, and for 5,000, $34; no. 6 ¾ white wove envelopes as follows: For 1,000, $11, for 3,000, $24, and for 5,000, $36. In other words, the cost of no. 10 would be $9 per 1,000 if ordered in quantities of 5,000; the cost of no. 9 would be $8.80 per 1,000, and of no. 6 ¾ would be $7.20 per 1,000. It is apparent that there is a substantial difference between these prices and those bid by plaintiff for the same envelopes.

The specifications attached to and forming part of the contract provide, inter alia:

"Letterheads or envelopes to be furnished in lots of one thousand (1000), three thousand (3000) or five thousand (5000) as required, and billed for as ordered and delivered."

Under the heading "Quality", they provide:

"Letterheads and envelopes furnished under these specifications to include the requirements of the County of Luzerne, from April 1, 1950, to March 31, 1951, inclusive. . . ."

### Discussion

Clearly this is a requirement contract, the county agreeing to purchase from the contractor all envelopes which it needs and the contractor agreeing to print and furnish to the commissioners the requirments during the year of various sizes of envelopes for the prices bid.

Since the commissioners cannot anticipate the exact needs in any one year, they properly asked for bids on various sized lots.

It is to be noted that the contract is not to furnish one lot of 1,000 or 3,000, or 5,000; it is to furnish envelopes "in lots" of 1,000, 3,000 or 5,000, as required. Certainly if they purchased 5,000 at one time and thereafter needed more, the commissioners could purchase more in such lots as they saw fit. They had a right to purchase them as they went along and as the

need arose. If during the year they needed five lots of 5,000 each, they had the right under the contract to purchase them. This is the same construction given by plaintiff to a contract entered into between him and the county commissioners in 1944. The fact that 26,000 are needed at one time, instead of at various times, does not alter the situation, nor does it interfere in any way with the right of the commissioners to purchase that many envelopes or the right of the printer to furnish that many envelopes under the contract.

Perhaps the commissioners should have asked for bids in lots of 25,000, or 50,000, or even 100,000, in view of what has transpired this year, but hindsight does not help.

While it is true that on one occasion the commissioners purchased envelopes for military ballots from someone other than the holder of the yearly requirement contract, that action was not challenged by any one nor was the error called to their attention by any one.

"It is . . . to be borne in mind that the judicial power to interfere in cases challenging acts of a character committed to the discretion of public officials is exceedingly limited. Indeed, there is a presumption that their actions are within the limits of their discretion:" Downing v. Erie City School District et al., 360 Pa. 29, 34.

The contract here is clear. There is no ambiguity and we have no right to interfere with its operation: Philadelphia Trust Company v. Northumberland County Traction Company, 258 Pa. 152.

Accordingly, we enter the following

*Order*

Now, April 24, 1951, the rule to show cause why a preliminary injunction should not issue is discharged.