## Mannear v. Luzerne County Institution District

*Hiscox & Hiscox*, for plaintiff.

*William S. McLean*, for institution district.

*R. L. Livingston*, for controller.

*J. Earl Langan*, for treasurer.

*Andrew Hourigan*, for Wyoming Valley Community Chest.

FLANNERY, J., February 6, 1957.—This is a motion for a preliminary injunction to restrain the county commissioners, as officers of the Luzerne County Institution District, the county controller and the county treasurer.

Plaintiff asks that the 1957 budget of the institution district be reformed by striking therefrom one mill of the proposed tax levy of four mills and eliminating entirely the provisions for a proposed bond issue in the amount of $2,950,000, which the district plans to use in the erection of a home for the care of the dependent physically infirm residents of Luzerne County.

At the same time he asks that any and all proposed action by the institution district for (a) the construction, purchase or extension of buildings, (b) land purchase and improvements and (c) the hiring of architects, be enjoined as without warrant in law, arbitrary and capricious.

The factual background presents no complications. The Luzerne County Institution District is without facilities for the dependent physically infirm residents of Luzerne County and from time to time in order to accommodate those of its citizens who require such care resort has been had to the facilities of other districts as and when these might be available. The results have been unsatisfactory and the need for other ar-

rangements has become so acute in the judgment of the County Commissioners of Luzerne County, directors of the institution district, defendants, and in the judgment of the Wyoming Valley Community Chest, intervening defendant, that a project was planned to provide a building to meet this need.

In furtherance thereof the directors of the institution district made provisions therefor in the 1957 budget and it is these provisions against which this action is directed.

The essential averments of the bill are admitted in the answer.

On January 2, 1957, the directors approved a proposed budget for the district which contained provisions in department 28, capital outlay, for (a) construction, purchase or extension of buildings in the amount of $3,000,000; (b) land purchase and improvements, $90,000; (c) architects, $180,000; total $3,270,000.

The proposed budget includes in the estimated receipts the sum of $2,950,000 from the proposed sale of bonds or $320,000 short of the estimated construction cost. It also includes $850,666 as the net return on the four mill tax imposed for the year 1957 and since this will exceed the current needs, it is from this source the $320,000 balance of the cost of the proposed improvements is to come.

This brings us to the crux of plaintiff's complaint. He takes the position that the inclusion of these proposed expenditures in the budget is "without warrant in law, and arbitrary and capricious and should be stricken from the budget, and the corresponding Estimated Receipts therefor from the sale of bonds $2,950,000 and current taxes $320,000. Total $3,270,-000 be likewise taken out of the budget."

The basis for this demand is laid in defendants' failure to secure approval of the court of common

pleas, to obtain approval of the Department of Welfare of the Commonwealth of Pennsylvania, to obtain approval of the court of quarter sessions, in failing to first obtain formal court approval, the absence of such corporate action by the directors of the institution district, i. e., obtaining court and Welfare Department approval, and as a final indication that these omissions are the bases of the action, paragraph 13 of the complaint avers that plaintiff does not object to a *regularly court approved* building project.

The relevant section of the County Institution District Law of June 24, 1937, P. L. 2017, was amended twice at the 1955 regular session of the General Assembly, first on October 7, 1955, P. L. 662 and again on February 10, 1956, P. L. 1020, sec. 1; 62 PS §2255. Neither of these amendments refer to the other and they must be construed together. Fortunately for our purposes the relevant paragraphs are identical and provide:

"As a function of the institution district and with its funds, the commissioners of each county shall have the power and it shall be their duty:

"(a) With the approval of the Department of Welfare as to the suitability and of the Court of Quarter Sessions of the Peace as to the amount of money to be expended, and upon such notice as the court may require, to acquire, by purchase or the right of eminent domain, lands and buildings for the care of dependents and for farms, taking title in the name of the county institution district;

"(b) To erect, equip, maintain, repair, alter and add to institutions for the care of dependents, and to equip, maintain, cultivate and improve farms, using their produce for the support of dependents. Any plan for the erection or substantial alteration of an institution must be approved as to suitability by the Department of Welfare and as to the amount of money to be ex-

pended by the Court of Quarter Sessions of the Peace; . . ."

In addition to approval by these authorities we are concerned also with the approval of the court of common pleas. It appears that section 4 of the amendment to the County Institution District Law adopted October 7, 1955, P. L. 662, 62 PS §2260, provides:

". . . The commissioners and the treasurer, as officers of the institution district, shall be subject to the same fiscal supervision and control as are provided by law with respect to county funds."

In the expenditure of county funds for the acquisition or the construction of such facilities, the preliminary approval of the court of common pleas is necessary to validate the proceedings. See County Code of August 9, 1955, P. L. 323, sec. 2305, 16 PS §2305. And interpreting the County Institution District Law cited above, the Supreme Court held in Davis v. Carbon County, 369 Pa. 322, that such "supervision and control as provided by law with respect to county funds" embraced approval by the court of common pleas, as required by the County Code.

It is clear therefore, as plaintiff contends, that before lands are acquired or buildings built, there must be prior approval from the Department of Welfare, the court of quarter sessions and the court of common pleas. It appears that certain other approvals are also necessary, such as the State Arts Commission, The Department of Labor and Industry, etc., but these have not been questioned and are not now before us.

The County Institution District Law of June 24, 1937, P. L. 2017, as amended, October 7, 1955, P. L. 662, sec. 3, 62 PS §§2259.2, 2259.3, 2259.4, 2259.5, requires the commissioners to adopt a budget for each succeeding fiscal year and sets out in detail the procedure by which it shall be done. The budget shall, inter

alia, "reflect as nearly as possible the estimated revenues and expenditures for the year for which it is prepared." The forms are prepared and furnished by the Department of Internal Affairs as provided by the act. And the final paragraph of the section recites this admonition:

"No work shall be hired to be done, no materials purchased, no contracts made, and no order issued for the payment of any moneys by the commissioners, which will cause the sums appropriated to be exceeded."

The need for the proposed facilities is not questioned and is not before us. The discretion of the commissioners in this respect is not challenged in these proceedings, and without foreclosing final judgment of the court when the question of approval is presented, we must conclude for the purposes of this litigation that there is a need for the proposed facilities, to wit, a home for the dependent physically infirm.

That being so it follows that the decision of the commissioners to meet that need is a proper performance of their duty, a proper exercise of official discretion and we get down to the narrow question of the manner in which they acted.

In order to perform that duty, they spelled out in the budget for the year 1957 the funds they proposed to spend in furtherance of the project, they hired architects to prepare plans and specifications and they enlisted a committee of real estate experts to assist in the location of a site. Here plaintiff interposed. He complains that the required approvals of the Department of Welfare, of the court of quarter sessions and of the court of common pleas have not been obtained. It is apparent that the objections can have no immediate application except as to the item for the employment of the architect for obviously no approval of either the site or the structure is possible at this time.

The location of the former has not yet been settled upon to be approved, and neither the plans nor specifications of the latter have been prepared to be considered by the court. Had either been attempted without strict compliance with the statutes, equity would be prompt to intervene, but there is no evidence before us that either is threatened and in the absence of any indication to the contrary, we must assume the proceedings are and will be legal and regular: Wilson v. New Castle City, 301 Pa. 358; Hibbs v. Arensberg, 276 Pa. 24; Campbell v. Bellevue Borough School District, 328 Pa. 197. The objections as to these particulars are, therefore, premature and cannot prevail.

The employment of the architect, however, must be judged by a different standard. If there is a need for new construction, architects must be consulted and, since a proposed project requires court and department approval, plans and specifications must be prepared for consideration. To this extent and to this point the matter will rest solely in the proper judgment of the officers of the institution district.

As was said in Thayer v. Lawrence County, 29 D. & C. 169, where the same question was under consideration:

"But the work of preparing the preliminary plans and specifications, which by section 561 are required to be submitted for approval or disapproval, and which, when approved, will be the basis for the advertising for bids and letting a contract, stands upon a different footing. As the statute specifically provides for their submission, and as obviously the commissioners cannot themselves prepare such plans and specifications, being presumably without the necessary professional knowledge and skill, the direction to submit them for approval imports by necessary implication authority to go to the expense of having them prepared by someone

possessing the requisite knowledge and skill and to impose upon the county the burden of paying a reasonable compensation for the work of such preparation": Pages 179, 180.

In that case the contract included not only the plans and specifications but also the supervision of construction. In the absence of court approval the court there held this latter phase invalid and beyond the power of the commissioners to act legally or to bind the county. Plaintiff argues that the employment of the architects is illegal here also, but in fairness it must be said that this contention was advanced before the contract was finally offered in evidence. If the contract under consideration were drawn as was the Thayer contract, equity would intervene, but here the contract is severable and contemplates the very contingency which arose to plague the parties there, i. e., failure of final approval of the project.

The contract before us provides:

"If any work designed or specified by the Architect is abandoned or suspended, in whole or in part, the Architect is to be paid for the service rendered on account of it."

And it further stipulates:

"It is distinctly understood and agreed by the parties hereto that in the event that the Institution District, shall, for any reason whatsoever, fail to secure the approval of the court for the construction of the proposed building, the compensation payable to the Architects shall be made on a quantum meruit basis."

Under such circumstances we are constrained to conclude that the motion to enjoin the employment of architects as having been done without court approval must be denied. They may proceed with such work as is necessary to obtain the requisite approvals. Anything beyond that must wait and becomes subject to the cancellation clause.

The commissioners were presented with a difficult dilemma. There could be no court approval without a proposed site and plans and specifications of the structure to occupy it. Surely they are not without some authority in the face of what appears to be a legal duty to act. The project had to start in the budget. That was done. As a practical necessity the next step had to be plans and specifications. That was done. If the requisite approval is not forthcoming in due course, there the matter ends and the preliminary expense will have to be paid. But the site will not be procured, the bonds will not issue and any surplus derived from income in excess of the actual needs of the institution district will remain in the treasury and inure to the benefit of the institution district. If the requisite approval is forthcoming, such surplus, if any there is, will go to the project as planned.

One question remains. Plaintiff now complains that since this is an improvement, permanent in nature, the cost should be spread out over the years of use and the entire expense should be defrayed out of the bond issue without resort to taxes for the year 1957. Hence, one mill of the four mill tax rate should be stricken off.

This argument cannot prevail. First and most important, the specific objection is neither set out in the complaint nor raised by the answer. It is not alleged that the levy is illegal because excessive, but rather that it is illegal because of failure of court approval. Under such circumstances we cannot regard it as part of the litigation and it too must be dismissed.

It is only fair to add, however, that even if the question were properly before us, its validity is doubtful.

The preliminary expenses are, at best, estimates and some moneys must be on hand, immediately available.

How much there should be is, we believe, a matter primarily for the discretion of the commissioners. But in any event we can discern no harm that can ensue. The alternatives are surplus cash if the plans do not materialize, a reduced bond issue if they do.

As to the bond issue, we may observe that whether the whole expense be deferred or whether the commissioners endeavor to pay part of the capital outlay the first year is again a matter of discretion.

The test is, as stated in McQuillin Municipal Corporations, 3d Ed. vol. 17, §49.51, p. 275:

". . . no act of a municipal corporation within the sphere of its powers, which is free from fraud or collusion, and which involves the exercise of administrative or legislative discretion on the part of the municipal authorities will be restrained by injunction, unless there is an abuse of discretion resulting in damage or oppression to an individual, or his property or his rights therein. . . ."

There is no fraud. There is no collusion. We can discover no abuse of discretion, certainly no abuse of discretion resulting in damage or oppression. Judgments may differ and opinions clash and there may be several methods of accomplishing the same purpose and they may vary in efficiency, expedition and/or policy but that does not warant intervention by the court.

"It is, of course, to be borne in mind that the judicial power to interfere in cases challenging acts of a character committed to the discretion of public officials is exceedingly limited. Indeed, there is a presumption that their actions are within the limits of their discretion: Lamb v. Redding, 234 Pa. 481, 484, 83 A. 362; Gemmell v. Fox, 241 Pa. 146, 150, 88 A. 426; Robb v. Stone, 296 Pa. 482, 492, 146 A. 91. 'The burden of showing to the contrary, when the action of a school

board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited, and they are permitted to interfere only where it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice . . . if the facts admit of no other conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, the law will regard it as an abuse of power, a disregard of duty, and it becomes the duty of the courts to interfere for the protection of the public': Lamb v. Redding, supra, at pp. 484-485. But, at the same time, the law does not assume to supervise an exercise of judgment by public officials in appropriate regard. As stated in Roth v. Marshall, 158 Pa. 272, 274, 27 A. 945,—'For an abuse of discretion or an act contrary to law the remedy is in the common pleas. But for a mistake in judgment as to the time or manner of performance of their official duties they are answerable to the constituency that elects them.' . . .": Downing v. Erie City School District, 360 Pa. 29, at page 34.

Wherefore, now, February 6, 1957, at 3:10 p.m., it is ordered, adjudged and decreed that the motion for preliminary injunction be, and the same is hereby, denied.

### Order Approving Plan

VALENTINE, P. J., January 21, 1958.—Hearing on the Luzerne County Institution District's petition for approval of its plan to construct an infirmary home having been held on November 4, 1957, after due notice to the public in accordance with the order of this court;

And, it appearing at said hearing that the facts set forth in the Luzerne County Institution District's petition are correct; namely, that the said institution district is charged with the duty of care and maintenance of the dependent infirm of this county and that to properly carry out its duties in this respect it is necessary for the said district to construct an infirmary home for such purpose, there being no other facilities within the county for the care and maintenance of the dependent infirm and there being no adequate facilities for such care and maintenance in homes located beyond the county limits;

And, it further appearing that the said district has, through condemnation proceedings, acquired a suitable location for the construction of its proposed infirmary home and that they have engaged the services of competent and qualified architects for the preparation of plans and specifications for such proposed home, and that the preliminary plans, as submitted to this court, appear adequate to cover the needs and purposes of the said institution district in such connection;

And, it further appearing at said hearing that the total cost of construction, including the cost of furnishing the said home, will be $4,500,000, for which amount proper provision has been made therefor in the Luzerne County Institution District Budget for the current year, and the necessary moneys are now on hand in the form of the proceeds of the Luzerne County Institution District's bond issue, and in addition thereto, other funds are available from the tax levy for the current year, as well as Federal funds to be made available to the said institution district under the Hill-Burton Act;

And, it, therefore, appearing that the said institution district may lawfully enter into a contract or contracts for the construction of the proposed infirmary

home without exceeding its constitutional debt limitation and without exceeding its budget;

And, it further appearing that the project in question is a lawful and proper one for the institution district and that as such it lies within the discretion of the county commissioners as executive and administrative officers of the said district;

Now, therefore, January 21, 1958, at 11 a.m., the Luzerne County Institution District's plan for construction of the proposed infirmary home for the care of the dependent infirm of Luzerne County, to be erected at a cost not to exceed $3,950,000, including equipment, and to be furnished at a cost not to exceed $500,000, is hereby approved subject to the approval of the Department of Welfare of the Commonwealth of Pennsylvania as to the plans and specifications and the suitability of the proposed home, as directed and required by the County Institution District Law of June 24, 1937, P. L. 2017, as amended by section 1 of the Act of October 7, 1955, P. L. 662, and by section 1 of the Act of February 10, 1956, P. L. 1020, 62 PS §2255.