## Commonwealth v. Williamsport Municipal Water Authority

*John C. Youngman, Jr.,* for plaintiffs.
*John P. Campana,* for defendant.

WOOD, J., April 7, 1972.—This case comes before the court on a complaint in equity by plaintiffs who seek to have made permanent a preliminary injunction restraining defendant, Williamsport Water Authority, from discontinuing fluoridation of the municipal water supply. Upon the basis of voluminous testimony and extensive other evidence, we make the following:

## FINDINGS OF FACT

(1) The Williamsport Municipal Water Authority (hereinafter "Authority") was organized on May 23, 1946, by the City of Williamsport under the Municipality Authorities Act of May 2, 1945, P. L. 382, sec. 1, et seq., 53 PS §301, et seq., as amended.

(2) The Authority supplies water to the City of Williamsport, the Borough of South Williamsport, the Borough of Duboistown, Loyalsock Township and Old Lycoming Township, all in this county.

(3) On August 11, 1966, the City of Williamsport (hereinafter "city") adopted an ordinance, no. 4092, authorizing and directing the introduction of fluorines or related compounds into the water supply furnished by the Authority.

(4) On July 20, 1966, the Authority resolved by unanimous vote to seek a permit from the Pennsylvania Department of Health (hereinafter "department") to undertake fluoridation of the public water supply "in the interest of the health" of its consumers and "particularly for the purpose of preventing the disease of dental caries."

(5) On August 23, 1966, the secretary of the department approved the fluoridation plan of the Authority and issued a permit. Fluoridation began in December of 1966 and is continuing pursuant to the department permit.

(6) In January of 1968, the city council passed an ordinance (no. 4214) "absolutely" repealing the aforesaid ordinance of August 11, 1966, relating to the introduction of compounds of fluorine into the water supply.

(7) On September 23, 1970, the Authority, by a 4-3 vote, resolved to discontinue the fluoridation of the

water supply. No hearing, debate or discussion was permitted before the question was submitted to a vote.

(8) The department and its secretary are charged by law with the duty and have the power "to protect the health of the people of the State, and to determine and employ the most efficient and practical means for the prevention and suppression of disease": Act of April 9, 1929, P. L. 177, art. XXI, sec. 2102(a), as amended, 71 PS §532(a); Act of April 27, 1905, P. L. 312, sec. 8, 71 PS §1403.

(9) The department has the responsibility to promulgate rules and regulations relating to the exercise of its powers: Act of April 9, 1929, P. L. 177, art. XXI, sec. 2102, as amended, 71 PS §532(g).

(10) The department has adopted a policy endorsing and recommending adjustment of the fluorine concentration of public water supplies in the Commonwealth so that the concentration is 1.0 to 1.2 parts per million, and has established procedures for obtaining department approval and permission to make such adjustment. This policy has been endorsed by numerous organizations concerned with promoting the health of the public and has been approved by the United States Public Health Service.

(11) Controlled fluoridation of municipal water supplies is a disease preventative process which benefits public health by preventing and suppressing the disease of dental caries.

(12) Fluoridation of public water supplies is a practical and efficient means for the prevention and suppression of the disease of dental caries among members of the public, and is superior to any demonstrated method of providing compounds of fluorine to the general public for the prevention and suppression of dental caries.

(13) If fluoridation of the subject municipal water supply is discontinued, there will be immediate and continuing irreparable injury to the health of the public, especially to that of children.

(14) The regulations of the department relating to public water supplies provide that "no treatment process or protective measure shall be added to, altered or discontinued without securing written approval from the Department": Rules and Regulations of Commonwealth of Pennsylvania, Department of Health, Chapter 4, art. 433, Regulations for Public Water Supply, sec. 5.

(15) The authority neither sought written approval to discontinue fluoridation nor notified the department it proposed to do so.


## DISCUSSION

Plaintiffs in this action are the Commonwealth of Pennsylvania, specifically the Department of Health, and seven private citizens who are residents of the various municipalities and townships served by the Williamsport Municipal Water Authority, and who are consumers of the water supplied by it. They seek to enjoin the proposed discontinuance of a program of controlled fluoridation of the public water supply begun by the Authority in December of 1966. Both the Authority and the city have voted to discontinue the fluoridation process.

Generally, an authority created under the provisions of the Municipality Authorities Act is vested with, and may exercise only such powers as are prescribed by statute: White Oak Borough Authority Appeal, 372 Pa. 424, 427 (1953). The principal responsibility of the subject Authority is to provide potable water to the

public. Neither its charter nor the Municipality Authorities Act, as amended, expressly or impliedly grants the authority either responsibility or power as to matters relating to public health.

The city is vested with certain powers relating to the prevention and control of communicable and noncommunicable disease, Act of April 23, 1956, P. L. (1955) 1510, sec. 3a, 35 PS §521.3(a). However, it is obvious that the exercise of its powers may not extend beyond its territorial limits. Since the water system of the authority supplies several other municipalities in addition to the city through a single, integrated system, and since there is no practical way to separate the distribution to the city, its health powers cannot govern the instant situation. Furthermore, we doubt that the city could give the authority a mandate on any operational policy if the city and authority boundaries coincided, as the authority is considered an independent agency of the State, not as an agency of the city: Whitemarsh Township Authority v. Elevert, 413 Pa. 329, 332 (1964). In any event, it is clear that the ultimate authority over the health and welfare of the people of the Commonwealth is vested in the Department of Health. Section 2102 of The Administrative Code of April 9, 1929, P. L. 177, art. XXI, as amended, 71 PS §532(a), provides that the "Department of Health shall have the power, and its duty shall be: (a) To protect the health of the people of the Commonwealth, and to determine and employ the most efficient and practical means for the prevention and suppression of disease." The department established and published a policy favoring and recommending adjustment of fluoridation levels in public water supplies to prevent development of caries. This put the matter of fluoridation in such a position that any supplier of

water to the public can undertake fluoridation as an incident of its general operations. In point of fact, as of 1969 some 271 communities in the Commonwealth, including the cities of Pittsburgh and Philadelphia, had adopted the practice of controlled fluoridation,* a practice which involves permission and control by the department. Thus, we do not consider that the Authority acted ultra vires in undertaking fluoridation. It was not confronted with the necessity of determining the merits of fluoridation. This determination had been made previously by the Commonwealth. The Authority simply resolved to adopt an approved and recommended water treatment procedure under the authority and supervision of the department.

The evidence and testimony presented in this case, clearly and preponderantly support the contention of the Commonwealth that controlled fluoridation of the public water supply is beneficial to the public, particularly to children, in that it effectively reduces the rate of dental caries by 60 percent or greater. Where considered on its merits in other jurisdictions, fluoridation of public water supplies has been upheld almost uniformly. See Graybeal et al. v. McNevin, 439 S. W. 2d 323 (Ky., 1969); Opinion of the Justices, 243 A. 2d 716 (Del., 1968); Attaya v. Town of Gonzales, 192 So. 2d 188 (La., 1966); Hall v. Bates 148 S. E. 2d 345 (S. C., 1966); Paduano et al. v. City of New York, 257 N. Y. S. 2d 531 (1965), affirmed 274 N. Y. S. 2d 158 (1966); Schuringa v. City of Chicago, 198 N. E. 2d 326 (Ill., 1964) and cases cited therein at page 329. See also the Pennsylvania case, Genkinger et al. v. City of New

---

* Fluoridation Census 1969, United States Department of Health, Education and Welfare.

Castle Water Co., 14 Lawrence 25 (1955). Further, the evidence received at trial of the instant case clearly supports plaintiffs' contention that to discontinue fluoridation would cause both immediate and long-range irreparable harm in that the substantial disease preventative effects of fluoride would no longer be available to the general public in a practical and efficient means. Since the department has the specific statutory authority and duty to protect the public health, we consider that it was obliged to initiate reasonable measures to maintain the subject fluoridation program, and that the instant suit is such an appropriate measure.

The relief sought by plaintiffs can be granted only if it is appropriate for the court to intervene. Generally, intervention is foreclosed, since there is a presumption that actions of public bodies are within the limits of their discretion: Downing v. Erie City School District et al., 360 Pa. 29, 34 (1948). However, where it is clear that action is arbitrary and capricious rather than a consequence of an exercise of discretion, restraint may be applied: Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446 (1960); Downing v. Erie City School District et al., supra. Here, the facts admit of no other conclusion than that the determination made by the Authority was influenced by considerations other than those consistent with the public interest. Where such is clearly the situation, restraint is justified: Lamb v. Redding, 234 Pa. 481 (1912). Possession of discretionary authority does not render a public body immune from judicial review: Price v. Philadelphia Parking Authority, 422 Pa. 317 (1966); Hyam v. Upper Montgomery Joint Authority, supra. There is positive evidence that the Authority gave no consideration to the merits of the matter in determining its

course of action. This is inconsistent with the clear requirement that the conduct of public bodies "must be guided by good faith and sound judgment": Price v. Philadelphia Parking Authority, supra at 329. Certainly, it is not an exercise of "good faith and sound judgment" to subject the health of the public to such a radical change without deliberate consideration of consequences. And this should obtain most firmly when the action proposed is counter to a pertinent policy enunciated by the Commonwealth Department of Health.

We note also that the Authority has not complied with the regulations of the Department regarding the proposed discontinuance of fluoridation. These regulations, adopted pursuant to the Act of April 9, 1929, P. L. 177, art. XXI, sec. 2102(g), as amended, 71 PS §532(g), are practical and reasonably necessary to insure continued and adequate control by the Department over health and safety requirements for public water supplies.

We are not insensitive to the aversion many people feel toward such measures as the use of a public water supply for a purpose as that here concerned. In our view, the problem of fluoridation is one for resolution by the legislature. However, in the present posture of our statutes and their administration by the executive branch of the government of the Commonwealth, we consider the instant matter is properly with this court for decision.


ORDER

And now, this April 7, 1972, the Williamsport Municipal Water Authority is permanently enjoined from discontinuing the fluoridation of the public water supply.