680 F.2d 298
 TRANSCONTINENTAL UNDERWRITERS AGENCY, S. R. L.
v.
AMERICAN AGENCY UNDERWRITERS and James H. Pye, Jr., and
Amherst Insurance Company, American Agency
Underwriters, Appellant.
 No. 81-2183.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 21, 1982.
Decided May 19, 1982.
 
 Leon W. Silverman, Stein & Silverman, Philadelphia, Pa., for American Agency Underwriters and James H. Pye, Jr.
 Barry D. Floyd, Bernstein & Fox, P. C., Philadelphia, Pa., for Amherst Ins. Co.
 Richard W. Hopkins, White & Williams, Philadelphia, Pa., for Transcontinental Underwriters Agency, S. R. L.
 Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 In this action governed by the laws of Pennsylvania, American Agency Underwriters (AAU), an insurance agent licensed in the Commonwealth of Pennsylvania, seeks payment of commissions from Amherst Insurance Co. (Amherst), a Pennsylvania insurance company, for placing with Amherst reinsurance business from Transcontinental Underwriters Agency, S. R. L. (Transcontinental), an Argentinian insurer.[1] The district court concluded that because AAU lacked actual authority to act on behalf of Amherst in placing Transcontinental's reinsurance business with it, and because no explicit agreement had been reached for the payment of commissions, none were owing. We reverse.
 
 I.
 
 2
 In late 1973, AAU began negotiating for the placement of reinsurance to be assigned by Transcontinental under a retrocession agreement.[2] At the time, Amherst, primarily in the business of insuring against the risk of loss from fire, had appointed AAU as its designated agent to place fire insurance and allied lines during the period of March 6, 1972, through September 30, 1975. Evan C. Stineman, Jr., the chief executive officer of Amherst and several other insurance companies collectively referred to as the Penn State Group, suggested that AAU place a 2.5% interest in the Transcontinental reinsurance treaty with Amherst. Amherst had applied for a change to its charter to authorize it to participate in reinsurance and retrocession treaties. That charter change did not become effective, however, until 1976, after termination of Amherst's retrocession agreement with Transcontinental. AAU, unaware that Amherst's charter did not authorize it to enter into retrocession agreements, placed 2.5% of the risk of Transcontinental's insurance portfolio with Amherst after having placed, and later withdrawn, two other insurance companies on this risk. Sometime in 1975, Amherst's risk on the treaty was increased from 2.5% to 3.5% by AAU's subagent in Europe.
 
 
 3
 When it developed that Amherst's liability to Transcontinental under the reinsurance treaty exceeded the amount of premiums that it earned, Amherst refused to pay its pro rata share of the liability to Transcontinental. Transcontinental brought suit in the Eastern District of Pennsylvania against Amherst for breach of contract, and against AAU for negligence and fraudulent misrepresentation. AAU asserted various cross-claims against Amherst, including one for its commissions earned in placing the interest in the Transcontinental treaty with Amherst. After a bench trial the court found Amherst liable to Transcontinental for all sums allegedly owing under the retrocession agreement. The court also concluded that because of its determination that Amherst was bound under the retrocession agreement, AAU was not liable to Transcontinental. Finally, the court held that AAU was not entitled to collect its normal commission from Amherst. It is this last claim which is presently before this court.[3]
 
 II.
 
 4
 We believe that the district court erred in its determination that AAU is not entitled to its commissions. Amherst was estopped to deny its liability to Transcontinental under the treaty notwithstanding that Amherst acted ultra vires. That Amherst's liability under the agreement with Transcontinental turns on the assertion of an estoppel should not affect AAU's right to the commissions it earned in acting at Amherst's behest.
 
 A.
 
 5
 The district court summarily held that because Amherst's charter did not authorize it to write reinsurance, and because AAU therefore lacked actual authority to act as Amherst's agent, AAU was not entitled to commissions because "(t)here was not sufficient evidence presented at trial to show that Amherst actually agreed to pay AAU premiums for the placing of retrocession agreements with foreign insurance companies." Conclusion of Law No. 16. In effect, the district court concluded that because Amherst acted ultra vires in entering into the retrocession agreement with Transcontinental, AAU as its agent was not entitled to the benefit of the rule that implies a promise on the part of a principal to compensate an agent for work performed by the agent at the principal's behest.
 
 
 6
 When an agent performs services for a principal at the principal's request, the law will normally imply a promise on the part of the principal to pay what the services are reasonably worth. The intent of a principal to compensate his agent for services performed in behalf of the principal will be inferred from his request to the agent to render the services. Miller v. Wilson, 24 Pa. 114 (1854); see Roberts v. Swift, 1 Yeates 209 (Pa.1794). The law of Pennsylvania is in accord with the position taken in the Restatement (Second) of Agency,[4] and by various commentators.[5]
 
 
 7
 The district court found that AAU acted in good faith in placing Transcontinental's reinsurance business with Amherst. AAU is in the business of arranging such agreements and normally receives a commission for these services. The district court found as a fact that AAU sent Amherst 21 statements of account indicating credits due and amounts owed by Amherst to Transcontinental on the retrocession treaty (Finding No. 25) and that on August 5, 1975, Amherst demanded payment from AAU of premiums due on 14 accounts, including a demand for payment on the Transcontinental account. (Finding No. 26) Amherst never notified AAU that it was not a party to the treaty. AAU would thus appear to be entitled to its commissions despite the absence of an explicit agreement so providing.B.
 
 
 8
 Under Pennsylvania law, an insurance company which lacks charter authority to issue a certain type of insurance is estopped, as against innocent purchasers, from denying its authority to have issued the policy. Downing v. School District, 360 Pa. 29, 61 A.2d 133 (1948). As the Downing court noted,
 
 
 9
 (A) corporation which has received and retained the benefits and advantages of a contract should not be allowed to escape its obligations upon a plea of ultra vires, especially if the policy does not contravene any statute or public policy.
 
 
 10
 Id. at 40, 61 A.2d at 138.
 
 
 11
 We have discovered no Pennsylvania cases involving the effect of a plea of ultra vires on an agent's claim for commissions. Nonetheless, we believe that the courts of Pennsylvania would apply the same equitable principles to the claim of an innocent and unknowing agent as it applies to an innocent purchaser. AAU acted as Amherst's agent in the normal course of its business in arranging the retrocession agreement between Transcontinental. The district court found that AAU acted in good faith upon the express representations of Amherst's officer Stineman. Just as Amherst is estopped to deny vis a vis Transcontinental its lack of charter authority to enter into the retrocession agreement, so it is estopped to deny AAU's actual authority to have acted on Amherst's behalf. AAU is thus entitled to its commissions for having arranged the placement of Transcontinental's retrocession interest with Amherst.
 
 III.
 
 12
 The judgment of the district court will be reversed. The case is remanded to the district court for a determination of commissions based on the rate customarily paid by the industry for the service which AAU provided, and for the entry of judgment in such amount in favor of AAU.
 
 
 
 [1]
 Transcontinental, an Argentinian corporation with its principal place of business in Buenos Aires, Argentina, instituted a diversity action against Amherst for losses it sustained under a retrocession agreement entered into between them which was processed by AAU as the agent of Amherst. Amherst is a Pennsylvania corporation with its principal place of business in South Fork, Pennsylvania. Defendant AAU is a Pennsylvania corporation. In the principal action the district court held that although AAU did not have actual authority to act as Amherst's agent in the transaction because Amherst was not at the time authorized under its charter to accept reinsurance business, Amherst was estopped from denying that it ratified AAU's agency with respect to all amounts claimed under the agreement. By separate order filed today we affirm the district court's judgment in the principal action, No. 81-1970
 The instant proceeding arises out of a cross-claim filed by AAU against Amherst. The district court had ancillary jurisdiction over the cross-claim between AAU and Amherst despite the lack of diversity between them; no independent jurisdictional grounds apart from the diversity jurisdiction between the parties to the original action are necessary. Atlantic Corp. v. United States, 311 F.2d 907, 910 (1st Cir. 1962); R. M. Smythe & Co. v. Chase National Bank, 291 F.2d 721, 724 (2d Cir. 1961); see Kerrigan's Estate v. Joseph E. Seagram & Sons, Inc., 199 F.2d 694, 696-97 (3d Cir. 1952). See generally 3 J. Moore, Moore's Federal Practice P 13.36 (2d ed. 1982).
 
 
 [2]
 Transcontinental, as a reinsurer, is in the business of providing reinsurance for various pools of insurance companies. In effect, it assumes responsibility for a portion of the risk which is created under individual policies issued by primary insurance companies in exchange for a stipulated portion of the premiums collected under the policies. Transcontinental itself has no direct contact with the policyholders whose risks it indirectly assures. To spread its own risk of loss, Transcontinental enters into retrocession or reinsurance treaties by which it assigns, and other insurance companies accept, all or a portion of the risk which Transcontinental reinsures. See generally 13A J. Appleman & J. Appleman, Insurance Law and Practice § 7681 (1976)
 
 
 [3]
 See supra note 1
 
 
 [4]
 § 441 Duty to Pay Compensation
 Unless the relation of the parties, the triviality of the services, or other circumstances, indicate that the parties have agreed otherwise, it is inferred that a person promises to pay for services which he requests or permits another to perform for him as his agent.
 Restatement (Second) of Agency § 441 (1958).
 
 
 [5]
 P. Mechem, Outlines of the Law of Agency § 544 (4th ed. 1952) ("An express agreement to pay is not usually necessary. As a rule, whenever services have been rendered by one person at the express request of another, and especially when rendered in the line of business or profession of the one rendering them, it will be presumed, until the contrary is shown, that they were to be paid for."); W. Seavey, Agency § 169(A) (2d ed. 1964) ("A request for services for which pay is ordinarily given implies a promise to pay and the right of the one performing the services is contractual, whether based upon the amount customarily paid for such services, or upon their value.")